IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
DAYTON DIVISION

---

**TINA ATKINSON, BONNIE GRAVES,
JESSICA FRAZIER, FLORENCE GIANFORTE,
RICHARD HALL, RACHEL MARSHALL,
SHELLY PRIMUS,** and **KAREN STOUT,**
Individually and On Behalf of All Others Similarly
Situated**,**

Plaintiffs,

vs.

**TELETECH HOLDINGS, INC.,
TELETECH@HOME, INC.,** and
**KENNETH TUCHMAN,**

Defendants.

Civ. No. 3:14-cv-00253-WHR

Judge Walter H. Rice

Magistrate Judge Michael R. Merz

---

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PRE-DISCOVERY
MOTION FOR CONDITIONAL CLASS CERTIFICATION AND
COURT-SUPERVISED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS**

### I.  INTRODUCTION

In the instant motion, Plaintiffs requested the Court to conditionally certify a collective action for unpaid wages, including minimum wages and overtime wages, under § 216(b) of the FLSA. Plaintiffs' proposed FLSA class is defined as:

> *All current and former hourly home-based Customer Service Agents who worked
> for Defendants at any time during the three years preceding the filing of the
> complaint.*

(Dkt. 25).  In their Response, Defendants do not oppose conditional certification; however, they wrongly oppose the scope of Plaintiffs' proposed class by attempting to limit Notice to individuals who worked 35 hours or more during at least one workweek in the past three years. Defendants also make several objections to the proposed Class Notice along with other requests related to the notice stage, most of which are improper.  For the reasons stated herein, except for a

few suggestions, Defendants' requests should be rejected.

## II. ARGUMENT

### A. THE COURT SHOULD APPROVE NOTICE TO THE CLASS MEMBERS WHO WORKED FOR DEFENDANTS AT ANY TIME SINCE DECEMBER 4, 2011

Plaintiffs initially requested the class definition to include hourly home-based Customer Service Agents who worked for Defendants in the three years prior to filing the Complaint. In Response, Defendants seek to send notice to Class members who worked for Defendants in the three years prior to the Court's pending order on conditional certification.

In light of the Court's recent conference calls on December 8, 2014 and December 16, 2014, along with the Case Management Order of December 19, 2014 (*See* Dkt. 26) and Plaintiffs' pending Motion for Equitable Tolling (*See* Dkt. 28), Plaintiffs now seek to send the Notice to **all current and former hourly home-based Customer Service Agents who worked for Defendants at any time since December 4, 2011** – which is three years prior to the date of their tolling request. If the Court denies the Plaintiffs' motion for equitable tolling, Plaintiffs would be satisfied with notice being sent to all individuals who meet the class definition and worked in the period defined as three years from the date of the order certifying the class. Using either of these dates should alleviate Defendants' concerns of sending notice to former employees whose statute of limitations have expired.

### B. DEFENDANTS' ATTEMPT TO LIMIT THE SCOPE OF THE PROPOSED CLASS IS MERITLESS BASED ON THE FACTS AND LAW

Defendants' argument that "Plaintiffs' proposed class should be limited to those employees who worked 35 hours or more during at least one workweek in the last three years" should be rejected for at least two reasons. (*See* Dkt. 29 at p. 3). First, this is not the appropriate stage of the certification process for the court to make a factual determination of how many hours Defendants' employees worked. Second, Defendants proposed limitation would exclude class

2

members who have viable minimum wage and gap time claims, and Defendants' arguments to the contrary are based on subjective and self-serving math, none of which is related to or supported by the record or the allegations made in this case.

1. *Determination of Hours Worked by Each Potential Plaintiff Would be Inappropriate at this Stage*

Defendants fail to offer any explanation of how the Court is supposed to implement their novel suggestion of limiting notice to employees who have worked at least one workweek in excess of 35 hours. Presumably, the fleshed-out version Defendants' proposal is they review their time records and then inform Plaintiffs' counsel and the Court which employees have made the cut. However, given the basic thrust of Plaintiffs' claims – that Defendants have failed to accurately record and pay its employees' working time – it is likely that Plaintiffs' counsel would dispute the accuracy of Defendants' records, and the issue would quickly devolve into a volley of factual disagreements, which is contrary to the Court's instructions for the parties to reserve such disputes for the de-certification stage. (*See* Dkt. 26). Indeed, at a later stage the Court would be in a far better position to make this determination. Employees who do opt in can offer evidence to contradict Defendants' time records, whereas currently they may not even know about this case. With respect to employees who do not opt in, no determination is needed regarding the proposed 35-hour threshold, and the Court will thus have conserved judicial resources that Defendants are asking the Court to expend now, at a time when potential Plaintiffs' claims continue to diminish and expire altogether.

2. *Defendants' Proposed Limitation Would Preclude Notice to Many Class Members With Valid Minimum Wage Claims*

Plaintiffs allege minimum wage violations in their First Amended Complaint. *See* Dkt. 18, First Amended Complaint at ¶ 89. However, Defendants' proposed 35-hour workweek limitation would also preclude notice to many putative Class members who may have a valid minimum

3

wage claim.

Defendants' proposed math is self-serving, unsupported by the record, and fails to accurately reflect the allegations made in this case. (*See* Dkt. 29 at p. 3). For example, when one reviews the declaration of opt-in Plaintiff Rachel Marshall (Dkt. 25-8), it is clear that a minimum wage violation exists. Marshall alleges that she typically worked **15-30 hours per week** (on the clock) for Defendants at **$8.00 per hour**. (*Id*. at ¶¶ 3 and 5). She also alleges that she worked approximately **8.5 hours** per week off the clock each week (not 3 hours as Defendants arbitrarily and conveniently use in its formula). (*Id*. at ¶¶ 6-8). Doing *this* math, Marshall was paid approximately **$6.23 per hour** while working for Defendants (($8.00 per hour x 30 hours = $240 actually paid) / (30 hours on the clock + 8.5 hours off the clock = 38.5 hours worked) = $6.23 per hour) or ($240 / 38.5 = $6.23 per hour). Under Defendants' proposed 35-hour workweek limitation, potential opt-in Plaintiffs like Rachel Marshall would never receive notice of this case and their statute of limitations would likely expire.

**3.**  *Defendants' Proposed Limitation Would Also Preclude Notice to Many Class Members With Valid Gap Time Claims*

Defendants' proposed 35-hour workweek limitation is based on the false premise that that Class members cannot recover "straight time," also known as "gap time" under the FLSA. In reality, under the FLSA, employees may recover "straight time" or "gap time" in workweeks where they also worked more than 40 hours in a workweek. A Department of Labor regulation appearing at 29 C.F.R. § 778.315, entitled "*Payment for all hours worked in overtime workweek is required*," provides in part that "compensation for the excess hours of overtime work under the [FLSA] cannot be said to have been paid to an employee unless all the straight time compensation due him for the non-overtime hours under his contract (express or implied) or under any applicable statute has been paid." 29 C.F.R. § 778.315.

4

Because § 778.315 clearly provides that in order to comply with the FLSA's overtime compensation mandate, an employer must pay all straight time due, several courts have implicitly or explicitly recognized claims for unpaid straight time for pay periods when the employee has also worked overtime. *See e.g.*, *Wright v. Pulaski County*, 2010 U.S. Dist. LEXIS 87283, *25-28 (E.D. Ark. Aug. 24, 2010)(a plaintiff can recover gap time compensation under the FLSA for pay periods in which he or she worked overtime); *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1284 (4th Cir.1996) (inquiring whether straight time hours were paid when overtime hours were worked, thus implicitly recognizing a right to straight time compensation); *Helmert v. Butterball, LLC*, 2009 WL 5066759, at *14 (stating that under § 778.315 plaintiffs are entitled to recover all wages including wages for straight time if they have a claim for overtime); *Schmitt v. Kansas*, 864 F. Supp. 1051, 1061 (D. Kan. 1994) ("Read together, §§ 778.315 and 317 establish the principle that, in order to comply with the overtime requirements of the FLSA, an employer must pay at the regular rate for all non-overtime hours worked in a period in which the employee also worked overtime."); *Reich v. Midwest Body Corp.*, 843 F. Supp. 1249, 1251-52 (N.D. Ill. 1994) ("Overtime pay, as required by the FLSA, has not been paid unless both straight time pay and overtime pay have been fully paid and have been paid based on an employee's regular pay.").

Thus, Defendants proposed limitation is futile, since many Plaintiffs' allege they were required to work far more than five hours per week off the clock. *See e.g.*, Dkt. 25-4, Boyd Declaration (worked 30-35 hours per week, but worked 7 hours or more off the clock each week); Dkt. 25-5, Fly Declaration (worked 30-35 hours per week, but worked 6 hours or more off the clock each week). If Defendants' artificial limitation were adopted, potential opt-in plaintiffs like Boyd and Fly would not receive notice of this lawsuit and their statute of limitations would likely expire. Therefore, the Court should reject Defendants' proposed limitation as arbitrary, unworkable, and unsupported by the law or facts of this case and order notice to **all current and**

5

**former hourly home-based Customer Service Agents who worked for Defendants at any time since December 4, 2011**.

### C. MOST OF DEFENDANTS' OBJECTIONS TO PLAINTIFFS' PROPOSED NOTICE ARE UNFOUNDED

Defendants make several objections to the form and method of Plaintiffs' proposed Notice (Dkt. 25-1), along with various other improper requests.[1] Plaintiffs first note that their proposed Notice has been approved by numerous courts in numerous jurisdictions around the country, including courts within the Sixth Circuit.[2] While Plaintiffs can compromise with Defendants on some of the issues, most of Defendants' objections and requests are unfounded, unsupported by the case law, and simply intended to deter and chill participation in the lawsuit.

#### 1. *Class Members' E-Mail Addresses Should be Produced*

Plaintiffs are amenable to not receiving putative class members' phone numbers, and can agree with Defendants' suggestion of providing the last four digits of a putative class member's social security number where notices are returned as undeliverable. However, Defendants' objection to producing e-mails for the putative class members is without merit. As discussed below, courts frequently authorize e-mail notification *in addition* to notification by mail to ensure the FLSA's remedial goals are met and to ensure putative Class members receive notice of their FLSA opt-in rights.

---

[1] Specifically, Defendants assert that: (a) putative class members' e-mail addresses should not be produced; (b) notice should not issue via e-mail; (c) Plaintiffs and their counsel should be prohibited from communicating with potential class members; (d) the opt-in period should be 60 days instead of 120 days; (e) the notice should include language warning potential opt-ins of the potential liability to pay Defendants' costs; (f) Plaintiffs' FLSA claims are not properly identified in the proposed notice; and (g) the term "unpaid wages" in the proposed notice indicates Defendants' liability.

[2] *See e.g.*, *Ross v. Jack Rabbit Servs., LLC*, Case No. 3:14-cv-00044-TBR, Dkt. 31 (W.D. Ky. June 3, 2014); *Lawrence v. Maxim Healthcare Servs.*, 2013 U.S. Dist. LEXIS 146032 (N.D. Ohio Oct. 9, 2013); *Shipes v. Amurcon Corp.*, Case No. 10-14943, slip. op. at 3-4 (E.D. Mich. May 16, 2012); *Lucas v. JBS Plainwell, Inc*., No. 1:11-cv-302, slip. op. at 1 (W.D. Mich. Jan. 26, 2012); *Aguilera v. Michigan Turkey Producers Coop., Inc*., No. 1:09-cv-420, slip op. at 4 (W.D. Mich. Feb. 10, 2010).

### 2.  *Notice Should Issue Via E-mail <u>and</u> U.S. Mail*

People regularly correspond by electronic mail today. Recognizing this reality, and understanding that one of the FLSA's remedial goals is to ensure putative class members receive notice of their FLSA opt-in rights, many courts order notice to putative class members through e-mail as a way of effectuating Congress's intent.

To obtain the benefits of the FLSA depends "on employees receiving accurate and *timely* notice concerning the pendency of the collective action." *Hoffman-La Roch*, 493 U.S. at 170. As such, the goal of the Act, and in turn court-ordered notice, should be to achieve the maximum number of potential opt-ins so as to vindicate the purpose of the Act. In an effort to achieve this goal, numerous courts have approved the use of online, electronic signature opt-in forms to secure the maximum number of opt-ins. *See e.g.*, *Ross v. Jack Rabbit Servs., Inc.*, 2014 U.S. Dist. LEXIS 72550 at *13-14 (W.D. Ky. May 29, 2014) (ordering the production of e-mails "for the purpose of notifying potential plaintiffs in this action"); *Williams v. Sykes Enterprises, Inc., et al.*, Case No. 13-0946 (D. Minn. Oct. 3, 2013) (finding that, "in this day and age, the potential class members [call center employees] should be allowed to opt-in electronically."); *White v. Integrated Electronic Section Technologies, Inc.*, 2013 WL 2903070 at * 9 (E.D. La. June 13, 2013) (citations omitted); *Margulies v. Tri-County Metro. Transp. Dist. of Or.*, 2013 U.S. Dist. LEXIS 146484 at *59-61 (D. Or. Oct. 10, 2013) ("email is an efficient and nonintrusive method of communication."); *Alequin v. Darden Rests., Inc*., 2013 WL 3945919 at *2 (S.D. Fla. July 31, 2013) ("[C]ourts in this Circuit commonly approve email notice to potential opt-in class members in FLSA cases."); *Ritz v. Mike Rory Corp*., 2013 WL 1799974 at *5 (E.D.N.Y. Apr. 30, 2013) (permitting notification by e-mail); *Rehberg v. Flowers Foods, Inc*., 2013 U.S. Dist. LEXIS 40337 (W.D.N.C. Mar. 22, 2013) (same); *Jones v. JGC Dallas LLC*, 2012 WL 6928101 at *5 n.9 (N.D. Tex. Nov. 29, 2012) (collecting cases approving e-mail notice in FLSA cases); *Jones v.*

*JGC Dallas LLC, et al.*, 2012 WL 6928101 at *8 (N.D. Tex. Nov. 29, 2012) ("potential plaintiffs should be given notice of the lawsuit and their right to opt in via first class mail and e-mail, and they should be given the option of executing their consent forms online via an electronic signature service…"); *Kelly v. Bank of America, N.A. et al.*, 2011 U.S. Dist. LEXIS 157763 at *5 (N.D. Ill. Sept. 23, 2011) ("…potential FLSA class members may submit a Consent to Join form…by electronically providing their name, date of birth, and last four digits of their social security number."); *Nobles v. State Farm Mutual Automobile Insurance Co.*, Case No. 10–4175 (W.D. Mo. Aug. 25, 2011) (allowing plaintiffs "leave to publish an internet website where class members may submit a consent to join form…by electronically providing their name, date of birth, and last four digits of their social security number).

These courts uniformly recognize that allowing prospective class members to opt-in to the case via electronic means—particularly where the vast majority of the employees use computers and e-mail on a daily basis—best effectuates the FLSA's remedial purpose.

  **3.**  *Neither Plaintiffs Nor Their Counsel Should Be Prohibited From Communicating With Potential Class Members*

There is absolutely no basis for Defendants' request that Plaintiffs or their counsel should be prohibited from communicating with potential class members during the notice period. Within the context of a Rule 23 class action, the Supreme Court held that "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 101, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981). At the same time, however, the Supreme Court cautioned that any "order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* These general principles apply to 29

8

U.S.C. § 216(b) collective actions as well. *Zwerin v. 533 Short North, LLC*, 2011 WL 2446622 at *2 (S.D. Ohio June 15, 2011).

Addressing a similar issue within the context of an FLSA collective action, this Court has provided:

> Courts have found a need to limit communications with absent class members where the communications were misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging class members not to join the suit. As commercial speech, ex parte communications tending to discourage absent class members from joining the suit may be limited by orders grounded in good cause and issued with a heightened sensitivity for First Amendment [c]oncerns.

*Snelling v. ATC Healthcare Servs.*, 2013 U.S. Dist. LEXIS 49105 at *6-7 (S.D. Ohio Apr. 4, 2013) (*citing Lewis v. Huntington Nat'l Bank,* 789 F. Supp. 2d 863, 871 (S.D. Ohio 2011)).

Given that neither Plaintiffs nor their counsel have participated in misleading, coercive, or improper communications (and Defendants do not even assert as much), Defendants' request should be denied.

### 4. *A 90-Day Opt-in Period is Appropriate*

While Plaintiffs do not believe 120 days to be an unreasonable amount of time for an opt-in period, they are willing to agree to a 90-day opt-in period.  This amount of time is common in FLSA cases within this District. *See e.g.*, *Sisson v. OhioHealth Corp.*, 2013 U.S. Dist. LEXIS 162464, *22 (S.D. Ohio Nov. 14, 2013) (ordering opt-in period of 90-days); *Lutz v. Huntington Bancshares, Inc.*, 2013 U.S. Dist. LEXIS 56477, 23 (S.D. Ohio Apr. 19, 2013) (same); *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 181 (S.D. Ohio 2012) (same).

### 5. *Notice Should Not Include Language Related to Potential Liability for Costs*

Plaintiffs vehemently disagree with Defendants that the suggestion of liability for costs should be included in the proposed Notice. Specifically, Defendants request inclusion of "if you do not prevail" language into the Notice in order to "warn" potential class members they may be

9

held responsible for costs. The Court should not be persuaded by this request for at least two reasons.

First, Defendants' intention for such a provision is to simply deter individuals from opting into the lawsuit in order to chill class participation. *See e.g.*, *Williams v. Cargill Meat Solutions Corp.*, 2010 U.S. Dist. LEXIS 72025 at *5 (E.D. Wis. June 30, 2010) (rejecting defendant's request to include "do not prevail" language and reasoning that "[c]ourts should not permit notice to chill participation in a [FLSA collective] action.").

Second, many courts have overruled similar requests by defendants to include "if you do not prevail" language into the notice, finding the statement should not be included because it is unnecessary and potentially confusing. *See e.g.*, *Sexton v. Franklin First Financial, Ltd,* 2009 WL 1706535 at *12 (E.D.N.Y. June 16, 2009). Another court found the statement inappropriate "over the remote possibility that such costs for absent class members would be other than *de minimis,* and the absence of any showing by defendants that counterclaims are likely to be meaningful in this case ...." *Guzman v. VLM, Inc.,* 2007 WL 2994278 at *8 (E.D.N.Y. Oct. 11, 2007) *order clarified,* 2008 WL 597186 (E.D.N.Y. Mar. 2, 2008). Additionally, the *Guzman* court concluded that a warning about assessment of costs may have an *in terrorem* effect that is disproportionate to the actual likelihood that costs or counterclaim damages will occur in any significant degree. *Id.* Similarly, in *Green v. Executive Coach and Carriage*, 895 F.Supp.2d 1026, 1030 (D. Nev. 2012), the court agreed with the line of cases stating that the inclusion of "if you do not prevail" language in the notice is not proper because it "'may have an *in terrorem* effect that is disproportionate to the actual likelihood that costs or counterclaim damages will occur in any significant degree.'" *Id*. (*quoting Guzman*, 2007 WL 2994278 at *8).

For these reasons, the Court should deny Defendants' request to include "if you do not prevail" language in the Notice regarding any obligation to pay Defendants' costs.

**6.** *Plaintiffs' FLSA Claims Are Adequately Described in the Notice*

Defendants incorrectly argue that the Notice should specifically state the Consent Form "is to pursue the claims described in the notice." (Dkt. 29, p. 6). The proposed Notice is already expressly limited to the FLSA claims asserted by Plaintiffs in their First Amended Complaint:

> The lawsuit alleges that TeleTech Holdings, Inc. and Teletech@Home, Inc. violated the federal Fair Labor Standards Act ("FLSA") by allegedly failing to pay its hourly customer service agent employees all wages owed, including a **minimum wage** and **overtime wages** for work performed in excess of forty (40) hours per week.

(Dkt. 25-1, Plaintiffs' Proposed Class Notice, p. 1) (emphasis added). Defendants fail to provide any proposed language related to its objection, so it is difficult to understand exactly what language they seek. In any event, the Notice appropriately states what Plaintiffs' claims are and adding further language concerning the scope of this litigation is unnecessary and potentially confusing to the putative Class members. Thus, Defendants' proposal to further describe what claims are at issue should be rejected.

**7.** *The Term "Unpaid Wages" Should Not Be Revised*

Plaintiffs disagree with Defendants that the simple use of the term "unpaid wages" somehow establishes or proves Defendants' liability in this case. (See Dkt. 29, p .6). Indeed, Defendants' requested revision "to make clear that Plaintiffs are only *claiming*" they were not paid properly is not well taken, especially when the same sentence they are contesting states "Plaintiffs *allege* that they are entitled to recover all unpaid wages for such work . . . ." Thus, Defendants request to revise this sentence is confusing and should be denied.

### III. CONCLUSION

For the reasons explained above, Plaintiffs respectfully request that the Court grant the relief requested in Plaintiffs' Pre-Discovery Motion for Conditional Class Certification. (Dkt. 25).

Dated: January 14, 2015

        Respectfully submitted,

        */s/Matthew L. Turner*
        Matthew L. Turner (P48706) *Admitted Pro Hac*
        Jesse L. Young (P72614) *Admitted Pro Hac Vice*
        SOMMERS SCHWARTZ, P.C.
        One Towne Square, Suite 1700
        Southfield, MI 48076
        (248) 355-0300
        mturner@sommerspc.com
        jyoung@sommerspc.com

        Robert E. DeRose (OH Bar No. 0055214)
        Robi J. Baishnab (OH Bar No. 0086195)
        BARKAN MEIZLISH, LLP.
        10th Floor
        250 East Broad Street
        Columbus, OH 43215
        614-221-4221
        rbaishnab@barkanmeizlish.com
        bderose@barkanmeizlish.com

        Jason T. Brown *(Pending Pro Hac Vice)*
        Nicholas Conlon *(Pending Pro Hac Vice)*
        JTB LAW GROUP, L.L.C.
        155 2nd Street, Suite 4
        Jersey City, NJ 07302
        Phone: (201) 630-0000
        jtb@jtblawgroup.com
        nicholasconlon@jtblawgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

        */s/Matthew L. Turner*
        Matthew L. Turner (P48706)
        mturner@sommerspc.com