IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TINA ATKINSON, *et al.*,

        Plaintiffs,

    v.

TELETECH HOLDINGS, INC., *et al.*,

        Defendants.

:

:

:

Case No. 3:14-cv-253

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING IN PART PLAINTIFFS' PRE-
DISCOVERY MOTION FOR CONDITIONAL CLASS CERTIFICATION
AND COURT-SUPERVISED NOTICE TO POTENTIAL OPT-IN
PLAINTIFFS PURSUANT TO 29 U.S.C. § 216(b) (DOC. #25);
OVERRULING WITHOUT PREJUDICE PLAINTIFFS' MOTION FOR
EQUITABLE TOLLING (DOC. #28); FURTHER INSTRUCTIONS
CONCERNING COURT-SUPERVISED NOTICE

---

Plaintiffs Tina Atkinson, Grace Bonnie, Jessica Frazier, Florence Gianforte,

Richard Hall, Rachel Marshall, Shelly Primus and Karen Stout filed suit, individually

and on behalf of all others similarly situated, against TeleTech Holdings, Inc.,

Teletech@Home, Inc., and Kenneth Tuchman, alleging violations of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and numerous state wage-and-

hour statutes.  Plaintiffs also assert claims of breach of contract and unjust

enrichment.

This matter is currently before the Court on two pending motions:  (1)

Plaintiffs' Pre-Discovery Motion for Conditional Certification and Court-Supervised

Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b) (Doc. #25); and (2) Plaintiffs' Motion for Equitable Tolling (Doc. #28).

## I.     Background and Procedural History

Defendants TeleTech Holdings, Inc. and TeleTech@Home, Inc. (collectively "TeleTech") provide customer management services for a wide variety of large corporations. Defendant Kenneth Tuchman is an owner, Chairman and Chief Executive Officer of Teletech. Plaintiffs are, or were, employed by TeleTech as Customer Service Agents ("CSAs"). CSAs work from home and are hourly, non-exempt employees.

In this collective action, filed on August 1, 2014, Plaintiffs allege that Defendants have violated federal and state wage-and-hour laws by failing to compensate them for "off the clock" time spent booting up their computers, completing reports, and logging in and out of software programs, an average of 25-40 minutes per shift. Plaintiffs further allege that Defendants violated the law by failing to compensate them for mid-shift time spent disconnected from the various software programs, an average of 45 minutes per shift. Plaintiffs seek recovery, on behalf of themselves and others similarly situated, of all unpaid regular and overtime compensation to which they are entitled, along with liquidated damages. They also assert claims for unjust enrichment and breach of contract.

2

On December 4, 2014, Plaintiffs filed a Pre-Discovery Motion for Conditional Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b). Doc. #25. They asked the Court to conditionally certify a proposed class consisting of "[a]ll current and former hourly home-based Customer Service Agents who worked for Defendants at any time during the three years preceding the filing of the complaint."[1]

During a December 8, 2014, conference call, Defendants requested additional time to file a response brief so that they could first take several depositions. Fearing that the ensuing delay would prejudice potential opt-in plaintiffs, for whom the statute of limitations continues to run until they file their opt-in notices, the Court suggested that the parties consider drafting a tolling agreement. The Court also asked Defendants to furnish a list of what discovery was needed to respond to Plaintiffs' motion.

During a follow-up conference call, held on December 16, 2004, the parties informed the Court that they had been unable to reach any agreement concerning equitable tolling or the appropriate scope of discovery. Thereafter, the Court issued a Case Management Order, Doc. #26, denying Defendants' request for discovery, and setting a briefing schedule. The Court indicated its willingness to entertain a motion for equitable tolling, which Plaintiffs filed on January 5, 2015, Doc. #28.

––––––––––––––––––––––

[1] Plaintiffs estimate that Defendants have employed approximately 1500 CSAs during the past three years.

II.    **Plaintiffs' Motion for Conditional Certification and Court-Supervised Notice
       to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b) (Doc. #25)**

     A.    **Conditional Certification**

The FLSA requires covered employers to pay non-exempt employees not less
than minimum wage for each hour worked, and one and one-half times the
employee's regular rate of pay for each hour worked in excess of forty hours per
week. 29 U.S.C. §§ 206-207. Employers who violate these provisions are liable
for the unpaid wages, plus an additional amount as liquidated damages, reasonable
attorneys' fees and costs. 29 U.S.C. § 216(b).

Under the FLSA, a collective action may be filed by one or more employees
on behalf of themselves and other "similarly situated" employees. *Id.* However,
unlike a typical class action lawsuit, "[n]o employee shall be a party plaintiff to any
such action unless he gives his consent in writing to become such a party and
such consent is filed in the court in which such action is brought." *Id.*

The certification process in an FLSA collective action typically proceeds in
two phases. Because the statute of limitations on an FLSA claim continues to run
until written consent is filed with the court, it is important that notice of the
collective action be given to all potential opt-in plaintiffs as soon as practicable so
they can decide whether to participate in the lawsuit. *Lewis v. Huntington Nat'l
Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011).

Before authorizing the plaintiffs to send the notice, however, the court must
first determine whether they have shown "that the employees to be notified are, in

4

fact 'similarly situated.'" *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th

Cir. 2006). Because this determination is generally made before discovery is

conducted, plaintiffs need make only a "modest showing" at this initial stage of

the litigation. *Lewis*, 789 F. Supp. 2d at 867. Employees are considered to be

"similarly situated" if their "causes of action accrued in approximately the same

manner as those of the named plaintiffs." *Id.* at 868. As the court noted in

*Comer*, application of this "fairly lenient standard . . . typically results in conditional

certification." 454 F.3d at 547. Factors to be considered include: "whether

potential plaintiffs were identified; whether affidavits of potential plaintiffs were

submitted; whether evidence of a widespread discriminatory plan was submitted,

and whether as a matter of sound class management, a manageable class exists."

*Lewis*, 789 F. Supp. 2d at 868 (quotations and citations omitted).

Once a court determines that the potential opt-in plaintiffs are "similarly

situated" to the named plaintiffs, notice is sent, opt-in forms are filed and

discovery takes place. At the second stage of the certification process, the

defendant may file a motion to decertify the class. At this point, the court revisits,

with greater scrutiny, the question of whether the class members are, in fact,

similarly situated. *Comer*, 454 F.3d at 547.

Defendants concede that Plaintiffs have satisfied their modest burden at the

initial stage of the inquiry. Plaintiffs have submitted declarations from twelve

current and former CSAs, from ten different states, to show that they were all

subject to the same company-wide policies and practices as the named Plaintiffs.

5

Doc. #25-3 through Doc. #25-14.  Like the named Plaintiffs, the declarants spent an average of 70-90 minutes per shift booting up their computers, logging in and logging out, and attempting to reconnect to various software programs when they were disconnected in the middle of a shift.  All maintain that, even though these tasks were essential parts of their job duties and primarily benefited Defendants, Defendants failed to compensate them for these hours worked.  These allegations give rise to a common theory of liability.

Based on the evidence presented at this initial stage of the proceedings, the Court finds that Plaintiffs have shown that the employees to be notified are "similarly situated," and it appears to the Court that a manageable class exists.

Defendants argue, however, that the scope of the proposed class should be limited in two ways.  First, Defendants argue that the class should be limited to those employees who worked for TeleTech three years prior to the date of this Decision and Entry, not three years prior to the filing of the August 1, 2014, Complaint.  This will help ensure that notice of the collective action is not sent to former employees whose statutes of limitations may have already expired. Plaintiffs concede that Defendants' request is proper, and the Court agrees.[2]

Second, Defendants argue that the proposed class should be limited to those employees who worked 35 hours or more during at least one workweek in the last

---

[2]  In the alternative, Plaintiffs argue that, if the Court agrees to equitably toll the claims of the potential opt-in plaintiffs, the notice should be sent to all CSAs who worked for Defendants at any time since December 4, 2014, the date of the tolling request.  For the reasons set forth below, however, the Court finds that equitable tolling is not appropriate at this time.

three years, because the FLSA is not violated "unless the hourly wage falls below the federal minimum wage." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 115 (2d Cir. 2013). The federal minimum wage is $7.25 per hour, but the potential opt-in plaintiffs were all paid at least $8.00 per hour. Defendants argue that, even assuming that the employees were paid for 30 hours of work, and worked an additional 3 hours for which they were not compensated, their *weekly* wage still exceeds the minimum hourly wage of $7.25 per hour ($240.00 for 33 hours of work = $7.27 per hour).

The Court agrees with Plaintiffs that it would be unwieldy and unfair to limit the class in this manner at this stage of the proceedings. Not only would it be time-consuming, but the accuracy of the individual time records is likely to be disputed, given the nature of Plaintiffs' claims. Moreover, because many potential opt-in plaintiffs allegedly worked more than 3 hours per week "off the clock," Defendants' proposed limitation could prevent some individuals with viable claims from receiving notice of this collective action. The Court therefore rejects Defendants' request to limit the proposed class to those employees who worked 35 hours or more during at least one workweek in the last three years. The viability of individual claims is a matter best left for a later date.

For the reasons set forth above, the Court SUSTAINS Plaintiffs' Motion for Conditional Class Certification, Doc. #25, and conditionally certifies a collective FLSA class consisting of "all current and former hourly home-based Customer

Service Agents who worked for Defendants at any time during the three years preceding the date of this Decision and Entry."

### B. Court-Supervised Notice/Opt-in Period

Plaintiffs also ask the Court to approve the form and method of their proposed Notice of Right to Join Lawsuit ("Notice"), Doc. #25-1, PageID##257-61. Plaintiffs would like to send this Notice, along with the "Consent to Join" form, to all potential opt-in plaintiffs via regular United States mail and e-mail.

To facilitate this, Plaintiffs ask the Court to require Defendants, within 14 days of the date of this Decision and Entry, to "identify all potential opt-in plaintiffs by providing a list in electronic and importable format, of the names, addresses, and e-mail addresses of all current and former hourly home-based Customer Service Agents who worked for Defendants at any time during the three years preceding the [date of this Decision and Entry.]" Doc. #25, PageID##230-31. Citing the high rate of turnover among Defendants' employees, Plaintiffs ask that potential opt-in plaintiffs be given 120 days to file their consent. This will allow Plaintiffs ample time to track down employees who may have relocated.

Defendants have raised several objections to the form and method of the proposed Notice. The Court discusses each in turn.

### 1. Method of Notice

Defendants first object to having to disclose telephone numbers and email addresses of each potential opt-in plaintiff, arguing that disclosure of this information would violate the privacy rights of their former and current employees.

8

On a related note, Defendants object to requiring that the Notice be sent by both regular U.S. mail and by email. They maintain that notice by regular U.S. mail is sufficient.

Because Plaintiffs have not requested disclosure of telephone numbers, this portion of Defendants' objection is overruled as moot. As evidenced by the cases cited by the parties, district courts across the country are split on the questions of whether it is appropriate to order disclosure of employees' email addresses, and whether notice should be sent to all potential opt-in plaintiffs via U.S. mail and email.

Within the Southern District of Ohio, several judges have found notification by U.S. mail to be sufficient for all *current* employees in FLSA collective actions, but ordered additional email notification for *former* employees in order to better ensure delivery. *See, e.g.*, *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 215 (S.D. Ohio 2011); *Wolfram v. PHH Corp.*, No. 1:12-cv-599, 2012 WL 6676778, at* 4 (S.D. Ohio Dec. 21, 2012); *Lutz v. Huntington Bancshares Inc.*, No. 2:12-cv-1091, 2013 WL 1703361, at *7 (S.D. Ohio Apr. 19, 2013); *O'Neal v. Emery Fed. Credit Union*, No. 1:13-cv-22, 2014 WL 842948, at *7 (S.D. Ohio Mar. 4, 2014).

Judge Graham, however, has recently ordered that notice be sent via regular U.S. mail *and* email to all potential opt-in plaintiffs in an FLSA case. *See Petty v. Russell Cellular, Inc.*, No. 2:13-cv-1110, 2014 WL 1308692, at *6 (S.D. Ohio Mar. 28, 2014). This appears to be in line with the current nationwide trend. Moreover, it advances the remedial purpose of the FLSA, because service of the

notice by two separate methods increases the likelihood that all potential opt-in plaintiffs will receive notice of the lawsuit, and of their opportunity to participate. In the Court's view, this outweighs any privacy concerns associated with the disclosure of the email addresses.

Therefore, Defendants, within 14 days of the date of this Decision and Entry, shall identify all potential opt-in plaintiffs by providing a list in electronic and importable format, of the names, addresses, and e-mail addresses of all current and former hourly home-based Customer Service Agents who worked for Defendants at any time during the three years preceding the date of this Decision and Entry.

### 2. Communication with Potential Opt-in Plaintiffs During Opt-In Period

Defendants next urge the Court to prohibit the parties and their attorneys from communicating with potential opt-in plaintiffs during the opt-in period. However, as the Supreme Court held in *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981), any such limits "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Future limitations may be appropriate if the parties are found to be making misrepresentations, or threatening potential plaintiffs to discourage them from opting into the suit. *See Zwerin v. 533 Short North, LLC*, No. 2:10-cv-488, 2011 WL 2446622, at *2 (S.D. Ohio June 15, 2011). However, a blanket protective order prohibiting all communication with potential opt-in plaintiffs is not warranted at this time.

10

### 3. Duration of Opt-in Period

Defendants next urge the Court to limit the opt-in period to 60 days instead of the 120 days requested by Plaintiffs. Plaintiffs have indicated their willingness to compromise, and limit the opt-in period to 90 days. The Court finds that 60 days may be insufficient in light of the high turnover rate of employees in this industry. Ninety days, however, should be sufficient. All opt-in notices must therefore be filed with the Court within 90 days after the Notice is sent.

### 4. Warning Concerning Liability for Defendants' Costs

Citing *Knispel v. Chrysler Group LLC*, No. 11-11886, 2012 WL 553722, at *7 (E.D. Mich. Feb. 21, 2012), and other cases, Defendants also argue that the Notice should warn potential opt-in plaintiffs that if they choose to opt in and Defendants prevail, the plaintiffs may be responsible for Defendants' costs of litigation. Plaintiffs argue that Defendants seek only to chill participation in the lawsuit, and that the *in terrorem* effect of such language is disproportionate to the possibility that any one plaintiff would be responsible for anything other than a *de minimis* amount.

The Court, however, agrees that "potential plaintiffs, in order to make an informed decision about whether to opt-in, should be made aware that there is a possibility that they may be liable for a defendant's costs of litigation." *Snide v. Discount Drug Mart, Inc.*, No. 1:11cv0244, 2011 WL 5434016, at *6 (N.D. Ohio Oct. 7, 2011). Accordingly, the proposed Notice must be revised to include a statement to that effect.

11

### 5. Scope of Consent

Defendants further argue that the "Consent to Join" form should clarify that the consent is not a general consent, but is limited to consent to pursue the claims identified in the Notice. In the Court's view, any reasonable person reading the "Consent to Join" form in conjunction with the Notice of Right to Join Lawsuit would understand the limited nature of the consent. The Court therefore overrules this objection.

### 6. Nature of Claim

Finally, Defendants argue that subsection 2 ("Description of the Lawsuit") of the proposed Notice needs clarification. It states that "Plaintiffs allege that they are entitled to recover all unpaid wages for such work . . ." Defendants maintain that this suggests that Plaintiffs have already proven that Defendants failed to pay the employees all compensation to which they were entitled. They ask that this language be revised to make it clear that Plaintiffs have *alleged*, but not yet established, that they are entitled to such funds. The Court overrules this objection as well. The very next paragraph of the proposed Notice clearly states that Defendants deny that they have failed to properly pay their employees for wages and overtime.

### C.    Further Instructions to Counsel

To summarize, the Court anticipates that it will approve the proposed Notice of Right to Join Lawsuit, Doc. #25-1, subject to the following revisions:

1. The class definition set forth in subsection 3 ("Persons Eligible to Receive This Notice") shall be amended to read: "All current and former hourly home-based Customer Service Agents who worked for TeleTech Holdings, Inc. and/or Teletech@Home, Inc. at any time since February 26, 2015.

2. The second paragraph of subsection 5 ("Effect of Joining This Lawsuit") shall be amended to read "United States federal courthouse in Dayton, Ohio" rather than "Cincinnati, Ohio."

3. A third paragraph shall be added to subsection 5 ("Effect of Joining This Lawsuit"), warning potential opt-in plaintiffs that, if they choose to join the lawsuit and Defendants prevail, there is a possibility that they could be held liable for Defendants' litigation costs.

4. A telephone number for Plaintiffs' counsel shall be inserted in subsection 12 ("Further Information").

Within 7 days of the date of this Decision and Entry, the parties shall make these revisions, and email a jointly-approved revised draft of the Notice of Right to Join Lawsuit, in Microsoft Word format, to rice_chambers@ohsd.uscourts.gov.

The Court will promptly review the revised Notice. If it approves the revisions, the Court will establish the filing deadline for all "Consent to Join" forms. The Court will insert that deadline in each blank in subsections 8 ("How to Join This Lawsuit") and 9 ("Deadline") of the Notice. The Court will then issue an Order: (1) directing the Clerk to make the Notice part of the record in this action;

and (2) directing Plaintiffs' counsel to send the Notice to all potential opt-in plaintiffs, via regular U.S. mail and email, on a date 90 days prior to the filing deadline established by the Court.

## III.    Plaintiffs' Motion for Equitable Tolling (Doc. #28)

FLSA claims for unpaid compensation must be filed within two years after the cause of action accrues, unless there was a willful violation of the statute, in which case the statute of limitations is extended to three years.  29 U.S.C. § 255(a).  A cause of action under the FLSA accrues on the date that payment is owed.  Each paycheck that fails to include wages that are owed constitutes a separate violation.  "Thus, a new cause of action accrues with the receipt of each paycheck."  *Viciedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.*, 246 F. Supp. 2d 886, 902 (S.D. Ohio 2003).

In a collective action, a *named* plaintiff's claim is considered to be filed on the date the complaint is filed and he or she files a written consent to join the collective action.  However, if a party is *not* named in the complaint, the claim is not considered to be filed until he or she files notice of written consent to become a party plaintiff.  29 U.S.C. § 256.

As explained in *Baden-Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822, 826 (S.D. Ohio 2007), the opt-in mechanism of the FLSA "necessarily involves some lapse of time between the date a collective action is commenced and the date that each opt-in plaintiff files his or her consent form."  Congress

14

chose not to automatically toll the statute of limitations from the date the collective action was filed. *See Woodard v. FedEx Freight East, Inc.*, 250 F.R.D. 178, 194 (M.D. Pa. 2008); *Grayson v. K Mart Corp*., 79 F.3d 1086, 1106 (11th Cir. 1996) ("In [amending § 216(b)], Congress expressed the concern that an opt-in plaintiff should not be able to escape the statute of limitations bearing on his cause of action by claiming that the limitations period was tolled by the filing of the original complaint.") (citing 93 Cong. Rec. 2, 182 (1947)).

In certain instances, however, the doctrine of equitable tolling may apply to FLSA claims. *See, e.g.*, *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 187-88 (6th Cir. 2008). Plaintiffs have filed a Motion for Equitable Tolling, Doc. #28, asking the Court to toll the statute of limitations governing the FLSA claims of the potential opt-in plaintiffs from December 4, 2014, when the Motion for Conditional Class Certification was filed, until the end of the opt-in period, in order to prevent the claims of those potential opt-in plaintiffs from eroding in scope or being extinguished altogether.

Plaintiffs have the burden of proving that equitable tolling is justified. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). Equitable tolling is to be used sparingly, and generally "only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000). *See also Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two

15

elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.").

During the conference call held on December 8, 2014, Defendants indicated a desire to take several depositions before responding to the motion for conditional certification. Because this would delay a ruling on the motion, Defendants agreed to voluntarily toll the limitations period for potential opt-ins during the period of delay resulting from that limited discovery. The parties were to draft a tolling agreement to that effect. During the December 16, 2014, conference call, however, the parties indicated that they had been unable to reach an agreement. Plaintiffs now wanted to take a 30(b)(6) deposition, and then file an amended motion for conditional certification. Because this would cause *additional* delay that was attributable to *Plaintiffs*, Defendants were no longer willing to toll the limitations period as originally agreed.

In opposing Plaintiffs' Motion for Equitable Tolling, Defendants argue that: (1) any claim for equitable tolling on behalf of potential opt-in plaintiffs is premature since those individuals are not yet before the Court, and the named plaintiffs lack authority to seek equitable tolling on their behalf; and (2) Plaintiffs have failed to show that equitable tolling is warranted in the circumstances presented here. After reading the cases cited in Defendants' brief, the Court agrees on both accounts.

In contrast to a class action lawsuit brought under Federal Rule of Civil Procedure 23, the named plaintiffs in an FLSA collective action do not represent

16

anyone other than themselves.  Accordingly, the named plaintiffs have no authority

to move to equitably toll the claims of the potential opt-in plaintiffs. *See Jesiek v.*

*Fire Pros, Inc.*, No. 1:09-cv-123, 2011 WL 2457311, at **1-2 (W.D. Mich. June

16, 2011) (holding that a motion for equitable tolling, purporting to seek relief on

behalf of plaintiffs who had not yet appeared, was premature, given that named

plaintiffs had no need for equitable tolling of their own claims, and had no personal

interest in the outcome of the motion).

Moreover, because the potential opt-in plaintiffs do not become parties to

the lawsuit until they file their consent forms with the court, the court lacks

jurisdiction to grant them equitable relief.  *See United States v. Cook*, 795 F.2d

987, 994 (Fed. Cir. 1986) (holding that because potential opt-in plaintiffs in FLSA

case were not yet before the court, the order purporting to toll the statute of

limitations on their claims was an impermissible advisory opinion and must be

vacated as prematurely issued).

Even setting aside these procedural and jurisdictional obstacles, Plaintiffs

have not established that equitable tolling of the claims of the potential opt-in

plaintiffs is warranted at this juncture.  In *Allen*, the court set forth the factors to

be considered in deciding whether equitable tolling should apply:

> (1) the petitioner's lack of notice of the filing requirement; (2) the
> petitioner's lack of constructive knowledge of the filing requirement;
> (3) diligence in pursuing one's rights; (4) absence of prejudice to the
> respondent; and (5) the petitioner's reasonableness in remaining
> ignorant of the legal requirement for filing his claim.

366 F.3d at 401 (quoting *Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001)). "This list of factors is not necessarily comprehensive, and not all factors are relevant in all cases." *Vroman v. Brigano*, 346 F.3d 598, 605 (6th Cir. 2003). "Absence of prejudice is a factor to be considered only after a factor that might justify tolling is identified." *Id*.

Application of these five factors to a group of potential opt-in plaintiffs, who have not yet received notice of the collective action and are not yet parties to the lawsuit, is convoluted at best. As one district court has cogently explained:

> Because Noble seeks to have the limitations period tolled as to plaintiffs who have not yet joined the suit, the five-factor inquiry is not relevant here. It would be inappropriate to attempt to apply the factors at this stage in the litigation because the Court does not yet know who the opt-in plaintiffs will be. The first, second, and fifth factors, which relate to a plaintiff's awareness of the filing requirement, cannot be analyzed with regard to plaintiffs whose identities are not yet known. The third factor is not relevant because, as Noble notes, "diligence is measured by whether Plaintiffs opted-in when given the opportunity," and "[t]he potential putative class has not yet been given the opportunity to opt-in to this lawsuit." . . . The fourth factor, absence of prejudice to the defendant, is not relevant unless at least one other factor militates in favor of tolling. . . . The five-factor test simply is not "suitable for preemptive, one-size-fits-all application to a group of as-yet-unidentified potential plaintiffs." . . . Although the factors will not all be relevant in all cases, the fact that none is applicable here suggests that equitable tolling would be inappropriate.

*Noble v. Serco, Inc.*, No. 3:08-76-DCR, 2009 WL 3254143, at *3 (E.D. Ky. Oct. 7, 2009) (footnote and citations omitted).

Moreover, as several courts have concluded, the doctrine of equitable tolling is an individualized inquiry, inappropriate for group consideration in the context of

an FLSA collective action. *See Heibel v. U.S. Bank N.A.*, No. 2:11-cv-593, 2012
WL 4463771, at * 7 (S.D. Ohio Sept. 27, 2012) (reserving ruling on equitable
tolling issue because it is "fact-specific and is applied on a case-by-case basis");
*Mathews v. ALC Partner, Inc.*, No. 2:08-cv-10636, 2009 WL 2591497, at * 8
(E.D. Mich. Aug. 24, 2009) (declining to equitably toll the claims of potential opt-in
plaintiffs, and holding that "[i]f and when potential plaintiffs whose claims would
otherwise be time-barred choose to opt in to the class, they may apprise the Court
of their circumstances and individually move for equitable tolling."); *Beetler v.
Trans-Foam, Inc.*, No. 5:11cv132, 2011 WL 6130805, at **4-5 (N.D. Ohio Dec.
8, 2011) (finding motion for equitable tolling to be premature, and noting that the
burden is on each individual opt-in plaintiff "to demonstrate facts satisfying the
Sixth Circuit's requirements for the application of the doctrine of equitable
tolling.").

Admittedly, some courts have granted motions to equitably toll the statutes
of limitations for potential opt-in plaintiffs in FLSA collective actions.  In fact,
Plaintiffs cite to three cases within this District which have done so. *See Baden-
Winterwood*, 484 F. Supp. 2d at 826; *Struck v. PNC Bank N.A.*, 931 F. Supp. 2d
842, 846-48 (S.D. Ohio 2013); *Engel v. Burlington Coat Factory Direct Corp.*, No.
1:11-cv-759, 2013 WL 5177184, at *2 (S.D. Ohio Sept. 12, 2013).

These courts, in attempting to apply the five-factor test for equitable tolling,
have generally reasoned that: (1) until notice of the collective action is given,
potential opt-in plaintiffs lack actual notice of the filing requirement; (2) although

19

the FLSA itself provides constructive notice of the filing deadlines, this factor
should be given little weight since it applies in every case; (3) failure to file an
earlier claim does not demonstrate a lack of diligence, because diligence is
measured by whether potential plaintiffs opted in once given notice and the
opportunity to do so; (4) because the lawsuit was filed as a collective action,
defendant is not prejudiced by equitable tolling; and (5) potential opt-in plaintiffs
reasonably remained ignorant of the filing deadline, given their lack of notice of the
collective action. *See e.g., Struck*, 931 F. Supp. 2d 846-48.

        With all due respect to my colleagues, the undersigned believes this analysis
to be faulty.[3]  It ignores the fact that, regardless of whether the potential opt-in
plaintiffs have notice of the collective action, they also had the option of filing their
own lawsuit alleging violations of the FLSA.  Viewed in this light, it cannot
necessarily be said that they lacked actual or constructive knowledge of their
claims, that they diligently pursued their rights, or that they remained reasonably
ignorant of the filing deadlines.

_____

[3]  Even if this Court believed that *Baden-Winterwood*, *Struck* and *Engel* were
correctly decided, those cases are factually distinguishable.  Each involved a
lengthy delay between the date the plaintiffs moved for conditional certification or
asked that notice be sent to potential opt-in plaintiffs and the date that the notice
was actually sent.  In this case, however, Plaintiffs did not move for conditional
certification until December 4, 2014.  Although the Court is still somewhat
concerned about prejudice caused to the potential opt-in plaintiffs as a result of the
delay in ruling on the motion (which, in turn, was partially caused by the parties'
failure to reach agreements on the scope of discovery and the period of equitable
tolling), the delay in this case is substantially shorter than in the cases cited.
Barring any unforeseen difficulties, it appears that notice of the collective action
will be given within the next few weeks.

As previously noted, Congress chose not to automatically toll the statute of limitations upon the filing of a collective action. Although equitable tolling may be justified in rare instances, it is an extraordinary remedy to be applied sparingly. To equitably toll the claims of all potential plaintiffs from the date the collective action is filed (or even from the date plaintiffs seek approval of the proposed Notice) until the end of the opt-in period would "transform[] this extraordinary remedy into a routine, automatic one." *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1244 (S.D. Ala. 2008).

Based on the above cited case law, the Court finds that Plaintiffs' motion, seeking to equitably toll the FLSA claims of the potential opt-in plaintiffs, is premature, and the Court lacks jurisdiction to grant the requested equitable relief at this time. Moreover, Plaintiffs have failed to show that equitable tolling is warranted at this juncture. Regardless of their knowledge of this collective action, each potential opt-in plaintiff presumably had actual notice that he or she was not being paid for the "off the clock" work, and there is no evidence that some "extraordinary circumstance" prevented them from asserting their own rights in a timely manner.

Based on the above, the Court OVERRULES Plaintiffs' Motion for Equitable Tolling, Doc. #28, WITHOUT PREJUDICE. Once the Notice has been sent and the opt-in period is closed, individual opt-in plaintiffs may file motions to equitably toll their claims, if circumstances so justify.

21

## IV. Conclusion

Plaintiffs' Pre-Discovery Motion for Conditional Class Certification and Court-Supervised Notice to Potential Opt-in Plaintiffs Pursuant to 29 U.S.C. § 216(b), Doc. #25, is SUSTAINED IN PART. The Court conditionally certifies a class consisting of "all current and former hourly home-based Customer Service Agents who worked for Defendants at any time during the three years preceding the date of this Decision and Entry."

Within 14 days of the date of this Decision and Entry, Defendants shall identify all potential opt-in plaintiffs by providing a list in electronic and importable format, of the names, addresses, and e-mail addresses of all current and former employees who fall within this class definition. Within 7 days of the date of this Decision and Entry, the parties shall email a jointly-approved, revised draft of the Notice of Right to Join Lawsuit, in Microsoft Word format, to rice_chambers@ohsd.uscourts.gov, for the Court's final approval.

Plaintiffs' Motion for Equitable Tolling, Doc. #28, is OVERRULED WITHOUT PREJUDICE as set forth above.

Date: February 26, 2015

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

22