**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| TINA ATKINSON,  CHRISTOPHER CASHION, ABIGAIL COLLEY, PATRICIA COLON, SHEREE DE PASS, RACHEAL DUNN, APRIL RAE ELLENSWORTH, EVELYN FAZIO, JESSICA FRAZIER, FLORENCE GIANFORTE, BONNIE GRAVES, RICHARD HALL, NATASHA JOAQUIN, CHRISTEN JOHNSON, KATHRYN KINZER, VICKY LOGAN, HEATHER MAHLIN, RACHEL MARSHALL, FRANK MATHIES DEVRALAI MORTON, SHELLY PRIMUS, STEVE STABLEIN, KAREN STOUT, AMBER WEEKLY, and CHRISTINA WILLIAMS, *individually and on behalf of all others similarly situated*, | Case No. 3:14-cv-00253-WHR<br><br>Judge Walter H. Rice<br><br>Magistrate Judge Michael R. Merz |
|       Plaintiffs, | |
|   v. | |
| TELETECH HOLDINGS, INC., TELETECH@HOME, INC., and KENNETH TUCHMAN, | |
|       Defendants. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF COLLECTIVE ACTION SETTLEMENT, CLASS ACTION SETTLEMENT, CERTIFYING CLASS FOR PURPOSE OF SETTLEMENT, DIRECTING <u>NOTICE TO THE CLASS, AND SCHEDULING FAIRNESS HEARING</u>**

Plaintiffs, Tina Atkinson, Christopher Cashion, Abigail Colley, Patricia Colon, Sheree De

Pass, Rachael Dunn, April Rae Ellensworth, Evelyn Fazio, Jessica Frazier, Florence Gianforte,

Bonnie Graves, Richard Hall, Natasha Joaquin, Christen Johnson, Kathryn Kinzer, Vicky Logan,

Heather Mahlin, Rachel Marshall, Frank Mathies, Devralai Morton, Shelly Primus, Steven

Stablein, Karen Stout, Amber Weekly, and Christina Williams, on behalf of themselves and all other similarly situated individuals, respectfully request that the Court: (1) preliminarily approve the proposed settlement agreement pursuant to Fed. R. Civ. P. 23(c) and (e) and Section 216(b) of the FLSA and applicable state laws; (2) preliminarily certify each of the proposed Settlement Classes; (3) approve the proposed class notice and forms; (4) set the deadlines for filing claim forms, opt-out forms, and objections to the settlement; and (5) schedule a fairness hearing to consider final approval of the proposed settlement, and approval of attorneys' fees, costs, and incentive awards. The relief Plaintiffs seek is appropriate for the reasons discussed in the attached Memorandum of Law.

Dated: March 31, 2016

Respectfully submitted,

*/s/ Matthew L. Turner*
Matthew L. Turner *(PHV)*
Jason J. Thompson *(PHV)*
Kevin J. Stoops *(PHV)*
Jesse L. Young (*PHV*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
248-355-0300
mturner@sommerspc.com
jthompson@sommerspc.com
kstoops@sommerspc.com
jyoung@sommerspc.com


Jason T. Brown *(PHV)*
Nicholas Conlon *(PHV)*
JTB LAW GROUP, L.L.C.
155 2nd Street, Suite 4
Jersey City, NJ 07302
Phone: (201) 630-0000
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com

Robert E. DeRose (OH Bar No. 0055214)
Robi J. Baishnab (OH Bar No. 0086195)
BARKAN MEIZLISH, et al. 10th Floor
250 East Broad Street
Columbus, OH 43215
614-221-4221
rbaishnab@barkanmeizlish.com
bderose@barkanmeizlish.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on March 31, 2016, I electronically filed the forgoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

/s/ *Matthew L. Turner*
MTurner@sommerspc.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TINA ATKINSON,  CHRISTOPHER
CASHION, ABIGAIL COLLEY,
PATRICIA COLON, SHEREE DE PASS,
RACHEAL DUNN, APRIL RAE
ELLENSWORTH, EVELYN FAZIO,
JESSICA FRAZIER, FLORENCE
GIANFORTE, BONNIE GRAVES,
RICHARD HALL, NATASHA JOAQUIN,
CHRISTEN JOHNSON, KATHRYN KINZER,
VICKY LOGAN, HEATHER MAHLIN,
RACHEL MARSHALL, FRANK MATHIES
DEVRALAI MORTON, SHELLY PRIMUS,
STEVE STABLEIN, KAREN STOUT,
AMBER WEEKLY, and CHRISTINA
WILLIAMS, *individually and on behalf of
all others similarly situated*,

      Plaintiffs,

  v.

TELETECH HOLDINGS, INC.,
TELETECH@HOME, INC., and
KENNETH TUCHMAN,

      Defendants.

Case No. 3:14-cv-00253-WHR

Judge Walter H. Rice

Magistrate Judge Michael R. Merz

## BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF COLLECTIVE ACTION SETTLEMENT, CLASS ACTION SETTLEMENT, CERTIFYING CLASS FOR PURPOSE OF SETTLEMENT, DIRECTING NOTICE TO THE CLASS, AND SCHEDULING FAIRNESS HEARING

# Table of Contents

TABLE OF AUTHORITIES ............................................................................... IV

I.           INTRODUCTION ............................................................................ 1

II.          OVERVIEW .................................................................................... 4

III.         GENERAL TERMS OF SETTLEMENT ..................................... 5

      1.    CLASS DEFINITIONS UNDER THE FLSA AND FED.
           R. CIV. P. 23 ............................................................................. 5

      2.    SETTLEMENT AMOUNT ....................................................... 5

      3.    ATTORNEYS' FEES AND COSTS......................................... 6

      4.    PAYMENTS TO NAMED CLASS REPRESENTATIVES ................................. 8

      5.    FEES AND EXPENSES OF THE SETTLEMENT
           ADMINISTRATOR ................................................................... 8

      6.    DISTRIBUTION TO CLASS MEMBERS ............................... 8

      7.    ADMINISTRATION OF NOTICE, OPT-IN, OPT-OUT,
           AND OBJECTIONS PROCESS.............................................. 9

      8.    RELEASE OF CLAIMS........................................................... 10

IV.        PRELIMINARY APPROVAL OF THE SETTLEMENT IS
            APPROPRIATE.................................................................................. 10

      1.    THIS SETTLEMENT SHOULD BE PRELIMINARILY
           APPROVED BY THE COURT.................................................. 12

      2.    THE STANDARDS FOR PRELIMINARY APPROVAL
           UNDER FED. R. CIV. P. 23 .................................................... 12

    A.    All of the standards for preliminary approval are met ........................................ 14

      3.    THE STANDARD FOR FLSA SETTLEMENT
           APPROVAL ............................................................................. 18

V.          CERTIFICATION OF THE RULE 23 SETTLEMENT
            CLASSES IS APPROPRIATE.............................................................. 18

      1.    THE ELEMENTS OF RULE 23(A) ARE SATISFIED FOR
           SETTLEMENT PURPOSES ................................................... 19

    A.    Numerosity................................................................................... 19
    B.    Commonality................................................................................. 19
    C.    Typicality ...................................................................................... 20
    D.    Adequacy ...................................................................................... 21

      2.    THE REQUIREMENTS FOR A CLASS UNDER FED. R.
           CIV. P. 23(B)(3) HAVE BEEN SATISFIED ....................... 22

      3.    THE PROPOSED NOTICE PROVIDES ADEQUATE
           NOTICE TO THE CLASS MEMBERS ............................. 24

A.      The Notice satisfies due process ........................................................................... 24

B.      The Notice is accurate, informative and easy to understand ................................. 26

4.      A   FINAL   FAIRNESS   HEARING   SHOULD   BE
        SCHEDULED .................................................................................................... 27

5.      SCHEDULE OF EVENTS ................................................................................. 27

VI.     CONCLUSION ....................................................................................................... 28

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Inter-Con Sec. Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ...................................................................................................... 26

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ..................................... 14, 20, 24

*Amchem Prods. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) .......................... 12

*Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305 (7th Cir. 1980) ............................... 11

*Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984) ...................................... 12

*Blum v. Stenson*, 465 U.S. 886 (1984) ................................................................... 8

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980) .................. 8

*Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996) .............................................. 8

*Cardoza v. Bloomin' Brands Inc.*, No. No.: 13-cv-1820-JAD-NJK, 2014 U.S. Dist. LEXIS 152903 (D. Nev. Oct. 24, 2014) .................................................... 17-18, 23

*Carson v. Am. Brands*, 450 U.S. 79, 101 S. Ct. 993, 67 L. Ed. 2d 59 (1981) ................ 13

*Cent. R. & Banking v. Pettus*, 113 U.S. 116 (1885) .............................................. 8

*Chem. Bank v. City of Seattle* (*In re Wash. Pub. Power Supply Sys. Sec. Litig.*), 19 F.3d 1291 (9th Cir. 1994) .................................................................................... 8

*Clark Equip. Co. v. Int'l Union, Allied Indus. Workers*, 803 F.2d 878 (6th Cir. 1986) ............... 6

*Covarrubias v. Capt. Charlie's Seafood, Inc.*, No. 2:10-CV-10-F, 2011 U.S. Dist. LEXIS 72636 (E.D.N.C. July 5, 2011) ............................................................. 12

*Cross v. Nat'l Tr. Life Ins. Co.*, 553 F.2d 1026 (6th Cir. 1977) .............................. 23

*Davis v. Abercrombie & Fitch Co.*, No. 08 CV 01859(PKC)(AJP), 2009 WL 1542552 (S.D.N.Y. June 2, 2009) ........................................................................ 26

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) .................................. 20

*Dietrich v. Bauer*, 192 F.R.D. 119 (S.D.N.Y. 2000) ........................................... 24

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982) ........................................................................................... 22

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...................................... 25

*Hochschuler v. G.D. Searle & Co.*, 82 F.R.D. 339 (N.D. Ill. 1978) ......................... 24

*In re Am. Med. Sys.*, 75 F.3d 1069 (6th Cir. 1996) ............................................. 22

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) .................... 18

*In re DPL Inc., Sec. Litig.*, 307 F. Supp. 2d 947 (S.D. Ohio 2004) ........................... 8

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) ............... 12

*In re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM (JMA), 2009 WL 995864 (S.D. Cal. Apr. 13, 2009) ............................................................................. 26

*In re Prandin Direct Purchaser Antitrust Litig.*, No. C.A. No. 2:10-cv-12141-AC-DAS, 2015 U.S. Dist. LEXIS 5964, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) ................ 8

*In re Sugar Indus. Antitrust Litig.*, 73 F.R.D. 322 (E.D. Pa. 1976) ........................ 24

*In re Telectronics Pacing Sys.*, 172 F.R.D. 271 (S.D. Ohio 1997) ............................................................ 24

*In re United StatesOil & Gas Litig.*, 967 F.2d 489 (11th Cir. 1992) ........................................................ 11

*Kinder v. Meredith Corp.*, No. 14-cr-11284, 2016 U.S. Dist. LEXIS 14066 (E.D. Mich. Feb. 5, 2016) ..................................................................................................................... 6, 12

*Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283 (3d Cir. 1998) .............................................................. 27

*Kritzer v. Safelite Solutions, L.L.C.*, No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994 (S.D. Ohio May 30, 2012) ..................................................................................................... 22

*Levell v. Monsanto Research Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000) .................................................... 13

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ............................................ 19

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970) ...................................................................................... 8

*MSK EyES Ltd. v. Wells Fargo Bank*, 546 F.3d 533 (8th Cir. 2008) ........................................................ 11

*Parker v. Harris Pine Mills, Inc.*, 206 Or. 187 (1955) ............................................................................... 19

*Parkhill v. Minn. Mut. Life Ins. Co.*, 188 F.R.D. 332 (D. Minn. 1999) .................................................... 21

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ................ 14-15

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414 (1968) ...................................................................................................................... 13

*Rawlings v. Prudential-Bache Props.*, 9 F.3d 513 (6th Cir. 1993) ............................................................ 8

*Ressler v. Jacobson*, 822 F. Supp. 1551 (M.D. Fla. 1992) ........................................................................ 16

*Ross v. Jack Rabbit Servs., L.L.C.*, Civil Action No. 3:14-CV-00044-TBR, 2014 U.S. Dist. LEXIS 72950 (W.D. Ky. May 29, 2014) ........................................................................ 18, 23

*San Antonio Hispanic Police Officers' Org. v. City of San Antonio*, 188 F.R.D. 433 (W.D. Tex. 1999) ...................................................................................................................... 16

*Seidman v. Am. Mobile Sys.*, 965 F. Supp. 612 (E.D. Pa. 1977) ............................................................. 16

*Senter v. GMC*, 532 F.2d 511 (6th Cir. 1976) ......................................................................................... 22

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559 (6th Cir. 2001) .................................... 12

*Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262 (E.D. Ky. 2009) ........................................ 12

*UAW v. Gmc*, 497 F.3d 615 (6th Cir. 2007) ......................................................................... 11, 14-15, 25

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ............................................................. 27

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ........................................................... 18-19

*Weitz & Luxenberg, P.C. v. Sulzer Orthopedics, Inc. (In re Sulzer Orthopedics, Inc.)*, 398 F.3d 778 (6th Cir. 2005) ..................................................................................................... 8

*Whitlock v. FSL Mgmt., L.L.C.*, Civil Action No. 3:10CV-00562-JHM, 2015 U.S. Dist. LEXIS 170516 (W.D. Ky. Dec. 21, 2015) ........................................................................... 19

*Williams v. First Nat'l Bank*, 216 U.S. 582 (1910) ............................................................................. 11, 13

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983) .......................................................................... 13, 18

*Wright v. Linkus Enters.*, No. 2:07-cv-01347-MCE, 2009 WL 2365436 (E.D. Cal. July 29, 2009) ................................................................................................................... 26

**Statutes**

29 U.S.C. § 13.14 (2012) ............................................................................................ 14

29 U.S.C. § 16(b) (2012) ............................................................................................ 27

29 U.S.C. § 201 (2012) ................................................................................................ 2

29 U.S.C. § 216(b) (2012) .................................................................... 2, 6, 15, 19, 27, 29

29 U.S.C. §§ 21.311-21.312 (2012) ............................................................................ 28

**Other**

Fed. R. Civ. P. 23 ................................................................................................... 6, 13

Fed. R. Civ. P. 23(a) ................................................................................................... 20

Fed. R. Civ. P. 23(a)(1) .............................................................................................. 20

Fed. R. Civ. P. 23(a)(2) .............................................................................................. 21

Fed. R. Civ. P. 23(b)(3) .............................................................................................. 24

Fed. R. Civ. P. 23(B)(3) .............................................................................................. 23

Fed. R. Civ. P. 23(c) ............................................................................................... 2, 29

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................................... 26

Fed. R. Civ. P. 23(e) ............................................................................... 2, 13, 14, 19, 27

Fed. R. Civ. P. 23(e)(2) .............................................................................................. 12

Fed. R. Civ. P. 23(g) .............................................................................................. 18, 23

Fed. R. Civ. P. 23(h) ................................................................................................ 8, 27

Fed. R. Civ. P. 30(b)(6) .............................................................................................. 16

## I.      INTRODUCTION

Plaintiffs seek provisional and preliminary certification for settlement purposes only of various settlement classes of current and former hourly home-based customer service agents ("CSA's") who worked for Defendants Teletech Holdings, Inc., Teletech@Home, Inc., and Kenneth Tuchman, (hereinafter, "Defendants" or "Teletech"), throughout the United States during the relevant statutory time periods. The claims pertain to the failure to pay wages and overtime to the CSA's under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201, *et seq.*; the analogous and applicable state wage and hour laws; and common law breach of contract claims arising under state law. Defendants have vigorously denied and continue to dispute all of the claims and contentions alleged in the action, and deny any and all allegations of wrongdoing, fault, liability or damage of any kind to Plaintiffs and the putative class. Plaintiffs now seek preliminary approval of a settlement sum of $3,500,000.00.  As shown below, the terms of the settlement are fair, reasonable, and confer a substantial benefit upon the members of each of the proposed classes.

In accordance with 29 U.S.C. § 216(b) and Federal Rule of Civil Procedure 23(e), Plaintiffs request that the Court: (1) preliminarily approve the proposed settlement agreement pursuant to Fed. R. Civ. P. 23(c) and (e) and Section 216(b) of the FLSA and applicable state laws; (2) preliminarily certify the Rule 23 Settlement Class; (3) approve the proposed class notice and claim forms; (4) set the deadlines for filing claim forms, opt-out forms, and objections to the settlement; and (5) schedule a fairness hearing to consider final approval of the proposed settlement and approval of attorneys' fees and costs.

The material terms of the settlement are as follows:

1.      Defendants agree to pay a fixed sum up to Three Million Five Hundred

Thousand Dollars ($3,500,000.00) dollars (the "Maximum Settlement Amount") to resolve all disputes and differences between Plaintiffs and Defendants up to the date of final approval (the "Final Approval").

2.      For purposes of settlement, the parties seek certification of the following Settlement Class:

> All current and former hourly home-based customer service agents who worked for Defendants at any time in the United States from August 1, 2011 to February 21, 2016.

3.      The parties also seek approval of the FLSA collective action on behalf of the current and former hourly home-based customer service agents who joined this action and were employed by Defendants at any time from August 1, 2011 to February 21, 2016.

4.      The Named Plaintiffs, Tina Atkinson, Christopher Cashion, Abigail Colley, Patricia Colon, Sheree De Pass, Rachael Dunn, April Rae Ellensworth, Evelyn Fazio, Jessica Frazier, Florence Gianforte, Bonnie Graves, Richard Hall, Natasha Joaquin, Christen Johnson, Kathryn Kinzer, Vicky Logan, Heather Mahlin, Rachel Marshall, Frank Mathies, Devralai Morton, Shelly Primus, Steven Stablein, Karen Stout, Amber Weekly, and Christina Williams, will each receive Incentive awards of $2,500.00.  Opt-In Plaintiff Rachel Jefferson (formerly a named plaintiff) will also receive an incentive award of $2,500.00.  The total Incentive award to all Named Plaintiffs is $65,000.  All such sums are to be paid from funds included in the Maximum Settlement Amount.

5.      Sommers Schwartz, P.C. and JTB Law Group, LLC ("Class Counsel") seek an award of attorneys' fees in an amount of one-third (33 1/3%) of the Maximum Settlement Amount, in addition to the reasonable and necessary costs incurred through the final approval of the settlement. All such sums are to be paid from funds included in the Maximum Settlement

Amount.

6.      The Maximum Settlement Amount shall be "all inclusive," including payments to the eligible and participating Class Members for their weeks worked during the applicable limitations period, Incentive awards, attorneys' fees, settlement administration costs, and litigation costs as approved by the Court, and will compensate Class Members for unpaid wages, overtime and all other claims for damages during the Settlement Period.

7.      After deduction of attorneys' fees, litigation costs, settlement administration costs, and Incentive awards, the Maximum Settlement Amount will be reduced to a common benefit fund in an amount equal to Two Million One Hundred Eighteen Thousand Three Hundred and Thirty-Three Dollars ($2,118,333.00) ("Common Benefit Fund").[1]  The Common Benefit Fund shall be used to disburse payments to Class Members who submit a timely and valid Claim Form and Release ("Claimants").

8.      Any amount of attorneys' fees, litigation costs, settlement administration costs, and/or Incentive awards not authorized by the Court or not expensed will be added to the Common Benefit Fund and available for calculating Settlement Payments to Claimants.

9.      The Parties agree that: (1) the aggregate value of the cash payments to the participants cannot exceed the 30% floor of the Settlement Fund Balance if the Qualified Claimants represent 10% or less of the Class; (2) the aggregate value of the cash payments cannot exceed 40% of the Settlement Fund Balance if the Qualified Claimants represent 30% or less of the Class; (3) the aggregate value of the cash payments cannot exceed 50% of the Settlement Fund Balance if the Qualified Claimants represent 45% or less of the Class; and (4) if the participation rate is 46% or greater the distribution shall be determined as described in the

---

[1] This amount could fluctuate slightly depending on the amount of actual costs and Settlement Administration Costs.

calculations above. In the event one of the events described in this Paragraph occurs, the Parties will reduce the 15 minutes outlined above so that the ultimate payout is consistent with this paragraph.

10.     Defendants will receive a Release of non-FLSA wage related state law claims that could have been asserted in this action through the date of Final Approval unless a Class Member submits a timely and valid Opt-Out Form.  Claimants who submit a Claim Form will also waive their FLSA wage claims.

This Motion is based on the following documents:

a.     Plaintiffs' Second Amended Complaint (Dkt. 106);

c.     Settlement Agreement (***Exhibit 1***), which contains the following Exhibits:

Exhibit A – Notice of Settlement

Exhibit B – Claim Form and Release

Exhibit C – Opt-Out Form

d.     Proposed Order for Preliminary Approval of Class and Collective Action Settlement, Approval of Notice to Class, and Setting of a Final Fairness Hearing (***Exhibit 2***); and

d.     Declaration of Class Counsel (***Exhibit 3***).

## II.     OVERVIEW

This $3,500,000.00 settlement resolves all current and potential litigation concerning the payment of wages and overtime by Defendants to their CSA's arising out of the facts and claims as set forth in Plaintiffs' Second Amended Complaint (Dkt. 106). It provides finality and certainty to disputed claims that existed between the parties leading up to and during the time this case has been in litigation.  This settlement was reached after one-and-a-half years of litigation and exhaustive negotiations conducted by the parties, including two mediation

sessions.  It was only reached through arms'-length bargaining by competent counsel with extensive class and collection action experience in wage and hour matters, and a high level of familiarity and understanding of the relevant facts and legal issues applicable to this case.  The parties believe that the settlement is fair and reasonable and in the best interests of the Rule 216(b) collective class and the state law Class Members and, under the applicable settlement authorities, is ripe for Court approval. See e.g., *Kinder v. Meredith Corp.*, No. 14-cr-11284, 2016 U.S. Dist. LEXIS 14066, at *5 (E.D. Mich. Feb. 5, 2016), A "settlement agreement should be preliminarily approved provided it 'is not the product of fraud or overreaching by, or collusion between, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" (quoting *Clark Equip. Co. v. Int'l Union, Allied Indus. Workers of Am., AFL-CIO*, 803 F.2d 878, 880 (6th Cir. 1986)).

## III.    GENERAL TERMS OF SETTLEMENT

Plaintiffs and Defendants have agreed, subject to approval by this Court, to enter into a Settlement Agreement. The details of the settlement are contained in the Settlement Agreement which is attached hereto as ***Exhibit 1***.  The proposed settlement resolves all Plaintiffs' claims against Defendants for the proposed Settlement Class.  A summary follows:

### 1.    CLASS DEFINITIONS UNDER THE FLSA AND FED. R. CIV. P. 23

The parties have agreed for settlement purposes only that the following Settlement Class can be certified pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23:

> All current and former hourly home-based customer service agents who were employed by Defendants at any time in the United States from August 1, 2011 to February 21, 2016.

### 2.    SETTLEMENT AMOUNT

The proposed settlement obligates Defendants to pay a maximum potential settlement amount of $3,500,000.00, which is "all inclusive."  Except as specifically set forth below, under

no condition will Defendants' liability for payments exceed this amount.  All settlement payments to Class Members, attorneys' fees, litigation costs, settlement administration costs, and Incentive awards shall be paid out of the Maximum Settlement Amount.

In addition to the Maximum Settlement Amount, Defendants shall be responsible for withholding and remitting all required employer-paid withholding and payroll taxes and similar expenses (including state and federal income taxes, social security contributions and unemployment taxes), including Federal Unemployment Tax Act ("FUTA") and the employer's share of Federal Insurance Contribution Act ("FICA") and Medicare taxes as required by law with respect to settlement payments to Claimants, as set forth in the Settlement Agreement, except for payment of taxes in connection with the Named Plaintiffs' incentive awards. See *Exhibit 1*.

The Claimants shall be solely responsible for the reporting and payment of the employee's share of any federal, state, and/or local income tax or other tax or any other withholdings, if any, on any of the payments made pursuant in accordance with this settlement.

### 3.      ATTORNEYS' FEES AND COSTS

Class Counsel seeks Court approval of an award of attorneys' fees and reimbursement of litigation expenses incurred in the prosecution of the lawsuit and the finalization of this settlement.  Pursuant to the Settlement Agreement, Plaintiffs and Class Counsel seek payment of attorneys' fees equal to one third (33.33%) of the Maximum Settlement Amount, plus litigation costs of approximately $175,000.00, also payable from the Maximum Settlement Amount.  In a class action, the attorneys responsible for creating the pool of settlement benefits set forth in a settlement agreement are entitled to be compensated for their time, efforts, and risks. The primary benefit that this settlement provides the Class is the creation of a $3,500,000.00 gross

settlement pool from which Class Members can make claims and receive valuable monetary benefits which best fit their needs.

District courts have explicit authority to approve attorneys' fees in class actions under Fed. R. Civ. P. 23(h). It is well established that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980)); see also*, Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393 (1970); *Central R. R. & Banking Co. v. Pettus*, 113 U.S. 116, 123 (1885).

In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that under the "common fund doctrine," a reasonable fee may be based "on a percentage of the fund bestowed to the class." The purpose of this doctrine is that "those who benefit from the creation of a fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Power Supply System Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). District courts within the Sixth Circuit follow this rule. *See, e.g., In re Prandin Direct Purchaser Antitrust Litig.*, 2015 U.S. Dist. LEXIS 5964, 2015 WL 1396473, at *4 (E.D. Mich. 2015) (granting fee award of one-third of the gross settlement fund); *In re Sulzer Orthopedics, Inc.*, 398 F.3d 778, 780-82 (6th Cir. 2005) (affirming individual fee awards made from a common benefit fund based on the gross settlement amount); *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996) ("It is within the district court's discretion to determine the 'appropriate method for calculating attorney's fees.'") quoting *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir.1993)); *In re DPL Inc., Sec. Litig.*, 307 F. Supp. 2d 947, 951 (S.D. Ohio 2004), noting that "the percentage of the fund method more accurately reflects the results achieved," (quoting *Rawlings*, 9 F.3d at 516). Here, Class Counsel's work has produced an excellent result for the

Class Members. Thus, the Court should award Class Counsel their requested fees and litigation costs.

### 4.      PAYMENTS TO NAMED CLASS REPRESENTATIVES

Under the proposed Settlement Agreement, Named Plaintiffs Tina Atkinson, Christopher Cashion, Abigail Colley, Patricia Colon, Sheree De Pass, Rachael Dunn, April Rae Ellensworth, Evelyn Fazio, Jessica Frazier, Florence Gianforte, Bonnie Graves, Richard Hall, Natasha Joaquin, Christen Johnson, Kathryn Kinzer, Vicky Logan, Heather Mahlin, Rachel Marshall, Frank Mathies, Devralai Morton, Shelly Primus, Steven Stablein, Karen Stout, Ambery Weekly, and Christina Williams, will each receive Incentive awards of $2,500.00.  Opt-In Plaintiff Rachel Jefferson (formerly a named plaintiff) will also receive an incentive award of $2,500.00.  The total Incentive award to all Named Plaintiffs is $65,000.  All such sums are to be paid from funds included in the Maximum Settlement Amount.

### 5.      FEES AND EXPENSES OF THE SETTLEMENT ADMINISTRATOR

The parties seek Court approval for expenses incurred in retaining and utilizing the services of a professional settlement administrator ("Settlement Administrator").  The parties are currently obtaining bids from reputable firms.   The fees and expenses of the Settlement Administrator shall be paid from the Maximum Settlement Amount.

### 6.      DISTRIBUTION TO CLASS MEMBERS

Participating Claimants will be entitled to a share of the Common Benefit Fund proportionate to their weeks worked during the Settlement Period. The following formulas will be used for the distribution of compensation to the Claimants:

(a)      Qualified Claimants who were employed by Defendants for a minimum of four (4) full workweeks during the class period will be eligible to receive the greater of a minimum payment of twenty-five dollars ($25) or the value of his or her individual claim, as described in Paragraph 43(b).  Qualified Claimants who

worked less than four (4) full work weeks during the class period are not eligible for a settlement payment.

(b)    Individual claim values will be calculated for each Qualified Claimant who worked a minimum of four full workweeks during the class period by adding fifteen (15) minutes per shift to the weekly time data provided by Defendants, and multiplying any additional unpaid time worked by each Qualified Claimant by their applicable regular hourly rate for all time under forty (40) hours in each workweek and by one-and-one-half times their applicable regular hourly rate for all time over forty (40) in each workweek. For purposes of these calculations, the Settlement Administrator shall use each Qualified Claimant's applicable wage for that week or most recent wage, as agreed to by the Parties.

(c)    For purposes of the calculations described in Paragraph 43(b), the applicable calculation period shall be thirty-six (36) months or three (3) years total, calculated as follows: three (3) years before a Named Plaintiff or Opt-in Plaintiff opted in to this Action and three (3) years from February 21, 2016 for all other Qualified Claimants.

*Exhibit 1*, Settlement Agreement at ¶ 43.

Any amount of attorneys' fees, litigation costs, settlement administration costs, and/or incentive awards not authorized by the Court or not expensed will be added to the Common Benefit Fund and available for calculating Settlement Payments to Claimants. All funds from the Common Benefit Fund not claimed in accordance with the terms of the Settlement Agreement shall be retained by Defendant, with the exception of a guaranteed payout of 30% or approximately $635,499.90.

## 7.    ADMINISTRATION OF NOTICE, OPT-IN, OPT-OUT, AND OBJECTIONS PROCESS

The Settlement contemplated by the parties' Settlement Agreement shall be administered by the Settlement Administrator in accordance with the terms set forth in the Settlement Agreement.

The Settlement Agreement provides that Class Members may submit a timely Claim Form to receive a payment from the Settlement Fund. To exclude themselves from the settlement, Class Members must submit a timely Opt-Out Form. To object, an individual must submit a

Claim Form, submit a written objection to counsel for each party as set forth in the Class Notice, and appear at the Final Approval and Fairness Hearing. Counsel for the parties will jointly file any objections they receive with the Court prior to the Final Approval and Fairness Hearing.

**8.     RELEASE OF CLAIMS**

Each Class Member who property submits a timely and valid Claim Form will receive a payment and release all federal and state wage and hour claims asserted or that could have been asserted in this lawsuit. Potential Claimants who do not submit a timely and valid Claim Form <u>or</u> an Opt-Out Form will not receive a payment but will release Defendants from all state law wage and hour claims asserted or that could have been asserted in this lawsuit, but will not release Defendants from any FLSA claims.

## IV.   <u>PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE</u>

It is long-settled that "compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank of Pauls Valley*, 216 U.S. 582, 585 (1910); accord, *MSK EyEs Ltd. v. Wells Fargo Bank, Nat'l Ass'n*, 546 F.3d 533, 541 (8th Cir. 2008) (noting "our strong public policy of encouraging settlement"). Likewise, there is a strong "federal policy favoring settlement of class actions." *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp*., 497 F.3d 615, 632 (6th Cir. 2007); see also, *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992), "Public policy strongly favors the pretrial settlement of class action lawsuits". The rationale for this policy is simple. "Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations omitted), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998), *aff'd*, 525 U.S. 315 (1999); accord, *Covarrubias v. Capt. Charlie's Seafood, Inc.*, 2011 U.S. Dist. LEXIS 72636, *6-7

(E.D.N.C. July 5, 2011), "There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation." (*quoting Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

When a settlement is reached prior to Rule 23 certification, "the proposed [s]ettlement [c]lass may be certified for settlement purposes." *Kinder v. Meredith Corp.*, No. 14-cr-11284, 2016 U.S. Dist. LEXIS 14066, at *2 (E.D. Mich. Feb. 5, 2016). "The requirements of Rule 23(a) and (b) must be satisfied before a court certifies a class for … for settlement-only purposes." *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 266 (E.D. Ky. 2009) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)).

Once a settlement class has been certified, the Court may approve a settlement that will bind class members "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The procedure for approving a class action settlement includes three steps: (1) the court must preliminarily approve the settlement; (2) the class members must be given notice of the proposed settlement; and (3) the court must hold a hearing to determine whether the proposed settlement is fair, reasonable and adequate. *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001).

"Preliminary approval of a proposed settlement is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive." *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 370 (S.D. Ohio 1990). "Once preliminary approval has been granted, a class action settlement is presumptively reasonable, and an objecting class member must overcome a heavy burden to prove that the settlement is unreasonable." *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio 2000)

(citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir.1983)). When evaluating whether to grant preliminary approval of a class settlement, the Court need "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88, 101 S. Ct. 993, 67 L. Ed. 2d 59 (1981).

## 1. THIS SETTLEMENT SHOULD BE PRELIMINARILY APPROVED BY THE COURT

The Parties seek *preliminary* approval of the Settlement Agreement under both the FLSA and Fed. R. Civ. P. 23(e). "Compromises of disputed claims are favored by the courts." *Williams*, 216 U.S. at 595. Settlement spares litigants the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources. The ultimate determination of whether a proposed settlement warrants approval resides in the Court's discretion. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). As demonstrated below, both Plaintiffs and Defendants submit that the terms of the Settlement Agreement are fair and reasonable and in the best interests of all parties. The settlement meets or exceeds the applicable standards for preliminary approval.

## 2. THE STANDARDS FOR PRELIMINARY APPROVAL UNDER FED. R. CIV. P. 23

As part of the Settlement Agreement, Plaintiffs seek certification of a Rule 23 class under the common law of each state in which the Defendant employed home-based customer service agents during the relevant time period. Fed. R. Civ. P. 23 provides the mechanism for certifying a class action, including, as here, through a class certified for settlement purposes. Specifically, Fed. R. Civ. P. 23(e) states:

> The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

> (1) The court must direct notice in a reasonable manner to all

class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e); *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997).

In determining whether preliminary approval is warranted, the primary issue before the Court is whether the proposed settlement is within the range of what might be found fair, reasonable and adequate, so that notice of the proposed settlement should be given to Class Members and a hearing scheduled to determine final approval. *See* MANUAL FOR COMPLEX LITIGATION, FOURTH, §13.14, at 172-73 (2004) ("*Manual Fourth*") (at the preliminary approval stage, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."). District courts in the Sixth Circuit use a seven-factor test in determining the fairness of a proposed settlement:

(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011) (quoting *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

### A.    <u>All of the standards for preliminary approval are met</u>

#### *(1)    There is no Risk of Fraud or Collusion*

The settlement reached by the Parties was the product of arms' length negotiations by experienced counsel. Each party was independently represented by counsel throughout this litigation. All counsel involved have extensive experience in litigating class claims, including those under the FLSA as Section 216(b) collective actions. Further, the Parties reached the settlement at the conclusion of their second full-day session with an experienced mediator.

Each counsel was obligated to and did vigorously represent their clients' rights. The one-and-a-half years of negotiations included motion practice over conditional certification, exchange of large volumes of documents and competing damage models, and at least two in-person mediation meetings between the Parties' counsel, not to mention dozens phone calls and countless e-mails. There were also six depositions taken which include two 30(b)(6) depositions of the Defendant corporation.

#### *(2)    Complexity, Expense, and Likely Duration of the Litigation*

Settling this case now saves the Parties from years of litigation and saves the Court's precious resources. Should the Parties continue to litigate this case, Plaintiffs would be required to undertake the lengthy process of sending Notice to the conditionally certified class, filing hundreds of consent forms, and fielding questions from potential opt-in plaintiffs. Following that process would likely be a year of additional discovery to flush out the Parties' proofs and defenses, likely followed by a class certification motion and a collective action decertification motion and dispositive motions before an eventual trial. It is very likely that this litigation would extend for another two years and cost the Parties hundreds of thousands of dollars or more in attorneys' fees and expenses.

### (3)    The Parties Engaged in Significant Discovery

This prong of the analysis "captures the degree of case development that class counsel has accomplished prior to settlement." *Seidman v. Am. Mobile Sys.*, 965 F. Supp. 612, 619 (E.D. Pa. 1977). "The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992). However, the "[s]ufficiency of information does not depend on the amount of formal discovery which has been taken because other sources of information may be available to show the settlement may be approved even when little or no formal discovery has been completed." *San Antonio Hispanic Police Officers' Organization, Inc. v. City of San Antonio*, 188 F.R.D. 433, 459 (W.D. Tex. 1999).

This case was sufficiently advanced at the point that settlement was reached. The case was conditionally certified as a collective action under the FLSA. Prior to reaching a settlement, the Parties exchanged written discovery and produced a substantial number of documents, including time and payroll records for thousands of Opt-in Plaintiffs. Further, Defendants took four (4) depositions and Plaintiffs took a Fed. R. Civ. P. 30(b)(6) deposition of two different individuals. Such an undertaking yielded substantial information, which allowed the Parties to discuss intelligently and freely the pros and cons of settlement.

### (4)    Likelihood of Success on the Merits

Class Counsel has carefully assessed the probability of ultimate success on the merits and the risks of establishing liability and damages. While Class Counsel certainly believes that the wage and overtime claims against Defendants are strong and could be proven at trial, a finding of liability is never assured, especially in complex litigation.

Even with a strong factual and legal case, the Class Members face significant risks in

establishing liability and damages.  Further risks exist as they relate to final certification of a class, overcoming attempted decertification and surviving any appeal.  Indeed, substantial risks and uncertainties were present from the outset of this case that made it uncertain that any relief for the Class Members would be obtained.

Class Counsel's view on the probability of any success on the merits was certainly influenced by the fact that Defendants have legal and factual grounds available to defend this action. First, Defendants contend that they are not liable for off-the-clock "gap time" under state or federal law. Second, Defendants argue that the amount of off-the-clock time alleged by Plaintiffs is inconsistent with the amount of time actually spent performing log-in and log-out activities. Finally, Defendants will argue that the off-the-clock work is not related to Plaintiffs' principal job activities and is *de minimis*. The existence of these arguments may bolster Defendants' defense to liquidated damages and willfulness, two issues which, if resolved in Defendants' favor, would undoubtedly have had a detrimental impact on the damages available to the Class Members.

While Class Counsel understandably takes issue with the viability of some of these alleged defenses, the risks associated with the continued litigation of the CSA wage claims simply cannot be disregarded in measuring the reasonableness of the settlement.

### (5)  *Opinions of Class Counsel and Class Representatives*

Proposed Class Counsel is experienced in class action litigation, having litigated consumer protection cases on a class-wide basis in many jurisdictions. *See e.g.*, *Cardoza v. Bloomin' Brands Inc.*, 2014 U.S. Dist. LEXIS 152903, *31 (D. Nev. Oct. 24, 2014) ("having considered defendants' objections, I find . . . Sommers Schwartz can fairly and adequately perform the role of interim class counsel for the putative class in this conditionally certified

FLSA action."); *Ross v. Jack Rabbit Servs., LLC*, 2014 U.S. Dist. LEXIS 72950, *14-15 (W.D. Ky. May 29, 2014) ("the Court is satisfied that these firms satisfy the requirements of Rule 23(g) and, so, will GRANT Plaintiff's request and appoint Jason J. Thompson of Sommers Schwartz, P.C. … , as interim class counsel."); *Gittens v. RM HQ, LLC*, No. 1:13-cv-04649-ER, *6 (S.D.N.Y. March 30, 2015) ("The Court appoints JTB Law Group, LLC … as Class Counsel because they meet all of the requirements of Federal Rule of Civil Procedure 23(g)."). Both Plaintiff and Class Counsel believe that the Settlement is fair, reasonable, and adequate, and in the best interests of the Class. See, e.g*., Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs[,]" and that deference "should correspond to the amount of discovery completed and the character of the evidence uncovered"). A strong initial presumption or fairness should attach to the proposed settlement because it was reached by experienced counsel after arm's-length negotiations.

### (6)    *Reaction of Absent Class Members*

At this stage, Class Counsel is not aware of any reaction by any absent Class Members.

### (7)    *The Public Interest*

By their very nature, because of the uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. Indeed, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003); *see also Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (public interest in settling litigation is "particularly true in class action suits . . . which frequently present serious problems of

management and expense"); *Whitlock v. FSL Mgmt., LLC*, No. 3:10CV-00562-JHM, 2015 U.S. Dist. LEXIS 170516, at *20 (W.D. Ky. Dec. 21, 2015) (finding that public interest factor was satisfied in wage-and-hour class settlement because "recovery has been obtained for such a large number of class members.").

Based on the foregoing, the Settlement is clearly fair, adequate and within the range of possible final approval such that it is reasonable. Accordingly, the standards for preliminary approval under Fed. R. Civ. P. 23(e) are met and the settlement should be preliminarily approved by this Court.

### 3. THE STANDARD FOR FLSA SETTLEMENT APPROVAL

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee ... affected in the amount of unpaid wages, or their unpaid overtime compensation, as the case may be ...." 29 U.S.C. § 216(b). FLSA claims may be compromised where a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Lynn's Food Stores, Inc. v. United States U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982). If the settlement of an FLSA suit reflects a "fair and reasonable resolution of a bona fide dispute" of the claims raised, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354-55. For all of the foregoing reasons, this settlement is a fair and reasonable compromise and should be approved.

## V. CERTIFICATION OF THE RULE 23 SETTLEMENT CLASSES IS APPROPRIATE

Pursuant to the Settlement Agreement, and in accordance with the model of other similar wage and hour cases that counsel have settled in the federal courts, the Parties have stipulated, for settlement purposes only, to the following Settlement Class:

All current and former hourly home-based customer service agents who were employed by Defendants at any time in the United States from August 1, 2011 to February 21, 2016.

Courts are authorized to adjudicate class-wide claims based on a common course of conduct. The United States Supreme Court in *Amchem* addressed the settlement class issue. 521 U.S. at 617. The court held that a district court faced with a settlement-only class need not inquire whether the class would present intractable problems with trial management, but that the other requirements for certification must still be satisfied. *Id.* at 620. Thus, any request for preliminary approval of a class settlement should include a section on why certification would be appropriate, albeit within the context of a settlement. Each of the requisites for class certification are satisfied here. Fed. R. Civ. P. 23(a) and (b)(3).

### 1. THE ELEMENTS OF RULE 23(A) ARE SATISFIED FOR SETTLEMENT PURPOSES

#### A. Numerosity

The numerosity requirement is met if the class is so large that joinder of all members would be impractical. Fed. R. Civ. P. 23(a)(1). In this case, the non-FLSA Rule 23 class consists of over 22,000 Class Members from over 25 states. These numbers are sufficient to satisfy the numerosity requirement, and joinder of this many individuals would be impracticable.

#### B. Commonality

Rule 23(a)(2) is satisfied where there are "questions of law or fact common to the class," an element which is known as "commonality." Commonality is not required on every question raised in a class action. Rather, Rule 23 is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation. *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). "[I]ndividual class members need not be 'identically situated' to meet the commonality requirement." *Parkhill v. Minn. Mut. Life Ins. Co.*, 188 F.R.D.

332, 338 (D. Minn. 1999). "The requirement is met where the questions linking the class members are substantially related to the resolution of the litigation even though the individuals are not identically situated." *Id.* Here, the primary questions of law and fact central to the claims against Defendants include:

a.   Whether Defendants employed the Class Members within the meaning of the applicable statutes, including the FLSA;

b.   Whether the preliminary time the Class Members spend on start-up and log- in activities each session is compensable time;

c.   Whether the mid-shift time the Class Members spend on connectivity issues is compensable time;

d.   Whether the time the Class Members spend on boot-up and login activities during their lunch break is compensable time;

e.   Whether the postliminary time the Class Members spend on log-out activities is compensable time;

f.   Whether the Class Members are owed wages (above the federally mandated minimum wage and overtime due under the FLSA) for time spent performing preliminary, mid-shift, or postliminary activities, and if so, the appropriate amount thereof;

g.   Whether Defendants' non-payment of wages amount to a breach of contract.

h.   Whether Defendants violated any other statutory provisions regarding compensation due to the Class Members; and

i.   Whether the Class Members have sustained damages and, if so, the proper measure of damages.

Thus, for settlement purposes, the proposed Class Members share sufficient commonality to satisfy Fed. R. Civ. P. 23(a)(2).

### C.   <u>Typicality</u>

Typicality is also satisfied for purposes of the Rule 23(a) inquiry. The typicality requirement tends to merge with commonality, such that "a finding of commonality will

ordinarily support a finding of typicality." *General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982). A class plaintiff's claim is typical of those of other class members if the claims arise from the same practice or course of conduct and are based on the same legal theory." *In re American Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996).

Here, Named Plaintiffs meet the typicality requirement because they allege that they, and the many other CSA's employed by Defendant, were not paid wages and overtime because of Defendants' company-wide and uniform policy of failing to pay for certain off-the-clock work. Named Plaintiffs' legal claims are typical of those of the Class as a whole because they apply the same legal theory to the same policies and practices. See, *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *12 (S.D. Ohio May 30, 2012) (finding typicality satisfied where "the CSRs and SRs performed similar (if not identical) call center duties for Safelite and were allegedly required to arrive at work early to spend (uncompensated) time booting up their computers in advance of the paid work day and of ending their paid work day before spending (uncompensated) time shutting down their computers.").

### D. Adequacy

Finally, Rule 23(a)(4) requires the Court to determine whether "the representative parties will fairly and adequately protect the interests of the class." This requirement calls for a two pronged inquiry: "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976). Rule 23(a)(4) tests "the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977).

The adequacy of representation requirement is met here. Named Plaintiffs understand and accepted the obligations of a class representative, and have adequately represented the interests of the putative class. Indeed, Named Plaintiffs have devoted much time and effort in prosecuting the class claims and assisting their counsel with investigating and litigating the case.

Named Plaintiffs also retained experienced counsel who routinely handle numerous FLSA class actions.. *See e.g.*, *Cardoza v. Bloomin' Brands Inc.*, 2014 U.S. Dist. LEXIS 152903, *31 (D. Nev. Oct. 24, 2014) ("having considered defendants' objections, I find . . . Sommers Schwartz can fairly and adequately perform the role of interim class counsel for the putative class in this conditionally certified FLSA action."); *Ross v. Jack Rabbit Servs., LLC*, 2014 U.S. Dist. LEXIS 72950, *14-15 (W.D. Ky. May 29, 2014) ("the Court is satisfied that these firms satisfy the requirements of Rule 23(g) and, so, will GRANT Plaintiff's request and appoint Jason J. Thompson of Sommers Schwartz, P.C. … , as interim class counsel."); *Gittens v. RM HQ, LLC*, No. 1:13-cv-04649-ER, *6 (S.D.N.Y. March 30, 2015) ("The Court appoints JTB Law Group, LLC … as Class Counsel because they meet all of the requirements of Federal Rule of Civil Procedure 23(g)."). Here, the class counsel and lead attorneys from Sommers Schwartz, P.C. and JTB Law Group, LLC, and local counsel Barkan Meizlish Handelman Goodin Derose Wentz LLP have been responsible for litigating the case against Defendants and have superior knowledge of the relevant facts and legal issues.

### 2. THE REQUIREMENTS FOR A CLASS UNDER FED. R. CIV. P. 23(B)(3) HAVE BEEN SATISFIED

"[Rule 23(b)(3)] encompasses those cases in which a class action would achieve economies of time, effort and expense and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Notes of Advisory Committee on Rules, 1966 Amendment.  Class actions may be certified where

common questions of law and fact predominate over questions affecting individual members, and where a class action is superior to other means of adjudicating the controversy. The predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication. *Amchem*, 521 U.S. at 623. Although Fed. R. Civ. P. 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of any individual issues. *In re Sugar Industry Antitrust Litig.*, 73 F.R.D. 322, 344 (E.D. Pa. 1976). The Court must find that "the group for which certification is sought seeks to remedy a common legal grievance." *Hochschuler* v. *G.D. Searle* & *Co.*, 82 F.R.D. 339, 348- 49 (N.D. Ill. 1978); *Dietrich v. Bauer*, 192 F.R.D. 119, 127 (S.D.N.Y. 2000) (in determining whether common issues of fact predominate, "a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class"). Rule 23(b)(3) does not require that all questions of law or fact be common. *See In re Telectronics Pacing Systems*, 172 F.R.D. 271, 287-88 (S.D. Ohio 1997).

Here, the alleged company-wide pay policies affected the claims of Defendants' current and former CSAs. Thus, while there may be some variation between individual Class Members' claims, *e.g.*, the actual amount of damages, common questions of law and fact predominate for settlement purposes. Named Plaintiffs maintain that these issues present common operative facts and common questions of law which predominate over any factual variations in the application of the classification and compensation policies to individual CSAs.

The Court must also consider if a class action is superior to individual suits. *Amchem*, 521 U.S. at 615. The superiority requirement involves a "comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir.

23

1998).   Here, as in *Hanlon*, the alternative methods of resolution are individual claims for relatively small amount of damages.   These claims would "prove uneconomic for potential plaintiffs" because "litigation costs would dwarf potential recovery."   *Id.*   The Settlement Agreement provides the Class Members with an ability to obtain prompt, predictable and certain relief, whereas individualized litigation carries with it great uncertainty, risk and costs, and provides no guarantee that any injured Class Member will obtain necessary and timely relief at the conclusion of the litigation process.

The class action device could also conserve judicial resources by avoiding the waste and delay of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims.  Litigation costs would surely surpass the average recovery for each Class Member.  For these reasons, the proposed Settlement Classes should be certified.

**3.     THE PROPOSED NOTICE PROVIDES ADEQUATE NOTICE TO THE CLASS MEMBERS**

**A.     The Notice satisfies due process**

Due process requires the class notice to be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW*, 497 F.3d at 629. Due process, however, "does not require the notice to set forth every ground on which class members might object to the settlement." *Id.* (internal quotation marks and citation omitted). Rather, "[a]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests." *Id*. (alteration in original, internal quotation marks and citation omitted).

Here, the Parties propose that the Settlement Administrator send, by mailing to each Class Member, as defined above and in the Settlement Agreement, the Notice and Forms

24

attached hereto at **Exhibit 1**. The Parties propose that these documents be sent to all known and reasonably ascertainable Class Members, based on Defendants' records and the criteria described in detail in the Settlement Agreement.

The Notice and Forms will be sent by First Class Mail, and the Settlement Agreement provides that the Settlement Administrator will endeavor to ensure that all Class Members receive notice by taking all reasonable steps to trace the addresses of all Class Members. The Settlement Administrator will then promptly mail the Notices and Forms to each Class Member for whom addresses are found.

This notice plan is consistent with class certification notices approved by numerous state and federal courts, and is, under the circumstances of this case, the best notice practicable. *See, e.g.*, *Wright v. Linkus Enters., Inc.*, No. 2:07-cv-01347-MCE, 2009 WL 2365436, at *7-8 (E.D. Cal. July 29, 2009) (holding notice involving similar mail procedures as here meets both Rule 23(e) requirement that "proposed settlement is fundamentally fair, adequate, and reasonable" and "Rule 23(c)(2)(B) requirement that the Court direct 'best notice that is practicable under the circumstances'")(quoting Fed. R. Civ. P. 23(c)(2)(B), (e)); *Davis v. Abercrombie & Fitch Co*., No. 08 CV 01859(PKC)(AJP), 2009 WL 1542552, at *1-4 (S.D.N.Y. June 2, 2009) (approving issuance of notice to class using a similar method as applied here); *In re M.L. Stern Overtime Litig*., No. 07-CV-0118-BTM (JMA), 2009 WL 995864, at *6-7 (S.D. Cal. Apr. 13, 2009) (finding similar mail procedure as applied here to be the "best notice practicable"); *Adams v. Inter-Con Security Sys., Inc*., No. C-06-5428 MHP, 2007 WL 3225466, at *3-4 (N.D. Cal. Oct. 30, 2007) (finding that notice using similar mail procedure as here "satisfies the notice requirements of Rule 23(e), and . . . all other legal and due process requirements").

### B.    The Notice is accurate, informative and easy to understand

Under Fed. R. Civ. P. 23(e), Class Members are entitled to notice of any proposed settlement before it is ultimately approved by the Court.  In accordance with this rule and the relevant due process considerations, adequate notice must be given to all absent Class Members and potential Class Members to enable them to make an intelligent choice as to whether to opt-in to or opt-out of the state classes.  *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 326-27 (3d Cir. 1998); *Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227 (9th Cir. 1996).  Similarly, pursuant to Section 16(b) of the FLSA, Class Members are entitled to notice to afford them with an adequate opportunity to opt into the action.  29 U.S.C. §216(b).  The notice, in turn, is necessary so that due process and Rule 23 requirements of notice and the right to be heard in court are achieved before a settlement is considered for Final Approval.

Here, the proposed Notice provides clear and accurate information as to the nature and principal terms of the Settlement Agreement, including: the monetary and other relief the settlement will provide Participating Claimants (as well as an explanation of the method of allocating and paying net settlement amount monies to Class Members who submit a valid and timely Claim Form and Release); the procedures and deadlines for opting-in to the FLSA classes, opting-out of the Rule 23 class, and submitting objections; the consequences of taking or foregoing the various options available to members of the classes; and the date, time and place of the final settlement approval hearing.  *See Manual Fourth* § 21.312.  Further, pursuant to Fed. R. Civ. P. 23(h), the proposed Notice also sets forth the maximum amount of attorneys' fees and costs that may be sought by present party Plaintiffs and their counsel.  Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a

settlement class notice disseminated under authority of the Court. *See, e.g.*, 4 NEWBERG ON CLASS ACTIONS (Fourth) §§ 8.21, 8.39; *Manual Fourth* §§ 21.311- 21.312.

### 4.    A FINAL FAIRNESS HEARING SHOULD BE SCHEDULED

The Court should schedule a final fairness hearing to determine that final approval of the settlement is proper.[2]  The fairness hearing will provide a forum to explain, describe or challenge the terms and conditions of the settlement, including the fairness, adequacy and reasonableness of the settlement, including the attorneys' fees, reimbursement of costs, and incentive awards to the Named Plaintiffs.

### 5.    SCHEDULE OF EVENTS

For all of the foregoing reasons, the parties request that the Court adopt the following schedule for purposes of effectuating the various steps in the settlement approval process described above.

**Proposed Timeline**

| EVENT | ANTICIPATED DATE |
|---|---|
| File Motion for Preliminary Approval Order; Settlement Agreement with Exhibits, including Class Notice; and Motion for Leave to File Second Amended Class Action Complaint. | March 31, 2016 |
| Entry of Preliminary Approval Order (Preliminary Approval). | TBD |
| Defendants shall provide the Settlement Administrator with addresses for Class Notice to be mailed. | Within 7 days after the Preliminary Approval Order. |
| Deadline for the Settlement Administrator to mail Class Notice, Claim Forms, and Opt-Out Forms (Mailing Date). | Within 21 days after Preliminary Approval. |

---

[2] The Parties respectfully request that the final approval hearing be held during the week of July 18, 2016 or July 25, 2016 so the settlement process may be finalized, and the case dismissed, by year end.

| EVENT | ANTICIPATED DATE |
|---|---|
| Deadline for Defendants to mail CAFA notices. | First Monday after Preliminary Approval. |
| Deadline for Potential Claimants to post-mark Opt-Out Forms and Objections (Opt-out Deadline). | Within 45 days after the Mailing Date |
| Deadline for Potential Claimants to post-mark Claim Forms (Claim Deadline). | Within 60 days after the Mailing Date |
| Deadline for Parties to file response to objections. | Within 10 days after Claim Deadline. |
| Incentive | |
| Final Fairness Hearing. | Week of July 18, 2016 or July 25, 2016. |
| Effective Date | 31 days after entry of Final Approval Order. |
| Deadline for Defendants to mail individual payments to each Participant Claimant. | Within 7 calendar days after the Effective Date. |

## VI.  <u>CONCLUSION</u>

For the foregoing reasons, the Parties respectfully request that the Court: (1) preliminarily approve the proposed settlement agreement pursuant to Fed. R. Civ. P. 23(c) and (e) and Section 216(b) of the FLSA and applicable state laws; (2) preliminarily certify each of the proposed Settlement Classes; (3) approve the proposed class notice and forms; (4) set the deadlines for filing claim forms, opt-out forms, and objections to the settlement; and (5) schedule a fairness hearing to consider final approval of the proposed settlement, and approval of attorneys' fees, costs, and incentive awards.

Respectfully submitted,

Dated:  March 31, 2016

*/s/ Matthew L. Turner*
Matthew L. Turner *(PHV)*
Jason J. Thompson *(PHV)*
Kevin J. Stoops *(PHV)*
Jesse L. Young (*PHV*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
248-355-0300
mturner@sommerspc.com
jthompson@sommerspc.com
kstoops@sommerspc.com
jyoung@sommerspc.com

Jason T. Brown *(PHV)*
Nicholas Conlon *(PHV)*
JTB LAW GROUP, L.L.C.
155 2nd Street, Suite 4
Jersey City, NJ 07302
Phone: (201) 630-0000
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com

Robert E. DeRose (OH Bar No. 0055214)
Robi J. Baishnab (OH Bar No. 0086195)
BARKAN MEIZLISH, et al. 10th Floor
250 East Broad Street
Columbus, OH 43215
614-221-4221
rbaishnab@barkanmeizlish.com
bderose@barkanmeizlish.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on March 31, 2016, I electronically filed the forgoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

/s/ Matthew L. Turner
MTurner@sommerspc.com