**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| TINA ATKINSON, CHRISTOPHER CASHION, ABIGAIL COLLEY, PATRICIA COLON, SHEREE DE PASS, RACHEAL DUNN, APRIL RAE ELLENSWORTH, EVELYN FAZIO, JESSICA FRAZIER, FLORENCE GIANFORTE, BONNIE GRAVES, RICHARD HALL, NATASHA JOAQUIN, CHRISTEN JOHNSON, KATHRYN KINZER, VICKY LOGAN, HEATHER MAHLIN, RACHEL MARSHALL, FRANK MATHIES DEVRALAI MORTON, SHELLY PRIMUS, STEVE STABLEIN, KAREN STOUT, AMBER WEEKLY, and CHRISTINA WILLIAMS, *individually and on behalf of all others similarly situated*, | |
| Plaintiffs, | Case No. 3:14-cv-00253-WHR |
| v. | Judge Walter H. Rice |
| TELETECH HOLDINGS, INC., TELETECH@HOME, INC., and KENNETH TUCHMAN, | Magistrate Judge Michael R. Merz |
| Defendants. | |

**PLAINTIFFS' UNOPPOSED MOTION AND**
**MEMORANDUM OF LAW FOR FINAL SETTLEMENT APPROVAL AND**
**APPROVAL OF ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE**
**AWARDS**

## TABLE OF CONTENTS

I.    **PROCEDURAL POSTURE AND CASE HISTORY** ........................................................ 2

II.   **CLASS DEFINITION** ................................................................................................. 4

III.  **SETTLEMENT AMOUNT AND ALLOCATION** ............................................................ 5

IV.  **NOTICE OF SETTLEMENT AND REACTION OF THE CLASS** ................................. 5

V.    **FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE** ............................... 7

    A.  The Absence of Collusion Supports Approval ................................................... 7

    B.  The Complexity, Expense, and Likely Duration of the Case Supports Approval .............. 8

    C.  The Amount of Discovery Taken by the Parties Supports Approval ................................. 9

    D.  The Likelihood of Success on the Merits Weighs in Favor of Approval ......................... 9

    E.  The Opinions of Class Counsel and the Class Representatives Supports Approval.......... 10

    F.  The Reaction of the Class Members Supports Approval................................................... 10

    G.  Approval of the Settlement is in the Public's Interest ....................................................... 12

    H.  The Settlement Notice was Sufficient............................................................................... 13

VI.  **CLASS COUNSEL'S ATTORNEYS' FEES ARE REASONABLE** ............................... 13

    A.  The Court Should Adopt the Percentage Approach to Award Attorneys' Fees ............... 14

    B.  The *Ramey* Factors Weigh in Favor of Awarding the Requested Fees ............................ 14

        1.  The settlement provides a substantial benefit to the class............................................. 15

        2.  Society's stake in rewarding attorneys who produce the benefits to the class in order to maintain an incentive to others ............................................................................................ 16

3.   Class Counsel undertook considerable risk of nonpayment in litigating this case on a contingency basis ........................................................................................................... 17

4.   The lodestar cross check supports approval of the requested fees ................................. 19

5.   The complexity of this litigation weighs in favor of the requested award .................... 21

6.   Class counsel's skill supports approval ......................................................................... 22

7.   The requested fee award is comparable to fee awards in similar cases ........................ 22

**VII. CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF NECESSARY EXPENSES SHOULD BE APPROVED ............................................................................... 23**

**VIII. THE PROPOSED CLASS REPRESENTATIVE AWARDS ARE REASONABLE 24**

## TABLE OF AUTHORITIES

**Cases**

*Bailey v. AK Steel Corp.*, No. 1:06-cv-468, 2008 WL 553764 (S.D. Ohio Feb. 28, 2008) .......... 20

*Bert v. AK Steel Corp.*, No. 1:02-CV- 467, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008).......... 7

*Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996).................................................................. 14

*Brotherton v. Cleveland*, 141 F. Supp. 2d 907(S.D. Ohio 2001).................................................. 23

*Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-CV-1119, 2011 WL 292008 (S.D. Ohio Jan. 26, 2011) ..................................................................................................................................... 14

*Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F.3d 1069 (9th Cir. 2016) ........ 10

*Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010) ................................................................................................................................. 23, 26

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240 (S.D. Ohio 1991).. 22

*Faust v. Comcast Cable Communs. Mgmt., LLC*, No. WMN-10-2336, 2014 U.S. Dist. LEXIS 95790 (D. Md. July 15, 2014).......................................................................................................... 10

*Gentrup v. Renovo Servs., LLC*, No. 1:07-cv-430, 2011 WL 2532922 (S.D. Ohio, June 24, 2011) ................................................................................................................................. 16, 19, 21

*Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610 (6th Cir. 2007) .................................................... 16

*Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992) .............................................. 7

*Hainey v. Parrott*, 617 F. Supp. 2d 668 (S.D. Ohio 2007) .................................................... 12, 25

*Heibel v. U.S. Bank Nat'l Assoc.*, No. 2:11-cv-00593-EAS-NMK (S.D. Ohio May 21, 2014) .. 20, 22, 24, 26

*In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061 (E.D. Mo. 2002)............................ 24

*In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752 (S.D. Ohio 2007) ............... 14, 19, 20

*In re Datatec Systems*, No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007)....... 23

*In re DPL, Inc., Sec. Litig.*, 307 F. Supp. 2d 947 (S.D. Ohio 2004)............................................ 14

*In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2012 WL 5493613 (E.D. Mich. Nov. 13, 2012) ..................................................................................................................................... 24

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998) 20

*In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003). ............................................. 23

*In re S. Ohio Corr. Facility*, 173 F.R.D. 205 (S.D. Ohio 1997), *rev'd on other grounds*, 24 Fed. App'x 520 (6th Cir. 2001) ......................................................................................................... 23

*In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72 (D.N.J. 2001) ............................. 23

*In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, *decision clarified*, 148 F. Supp. 2d 936 (S.D. Ohio 2001)................................................................................................................ 23

*Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-CV-1061, 2013 WL 2295880 (S.D. Ohio May 24, 2013) ........................................................................................................................... 7, 25, 26

*Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 WL 1945144 (S.D. Ohio May 30, 2012) ......................................................................................................................................... 16

*Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 WL 6676131 (S.D. Ohio Dec. 21, 2012) ... 14, 19, 20, 22

*McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730 (6th Cir. 2002)) ......................................... 19

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F. 2d 1188 (6th Cir. 1974) .................................... 14, 15

*Rotuna v. W. Customer Mgmt. Grp.*, LLC, No. 4:09CV1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010) ................................................................................................................................... 23

*Smillie v. Park Chem. Co.*, 710 F. 2d 271 (6th Cir. 1983).............................................................. 22
*Struck v. PNC Bank N.A.*, No. 2:11-cv-00982- ALM-NMK (S.D. Ohio May 16, 2014) . 20, 24, 26
*UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)........................................................... 7
*Whitford v. First Nationwide Bank*, 147 F.R.D. 135 (W.D. Ky. 1992) ...................................... 13

**Statutes**
Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ............................................................ 1, 4, 11

**Rules**
Federal Rule of Civil Procedure 54, ..................................................................................... 2, 13
Federal Rule of Civil Procedure 23 ....................................................................................... 2, 4, 13

**Treatises**
3 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 14.03 at 14-5 (3d ed. 1992)... 20

v

## INTRODUCTION

This is a collective and class action lawsuit for unpaid overtime wages brought by Plaintiffs Tina Atkinson, Christopher Cashion, Abigail Colley, Patricia Colon, Sheree De Pass, Rachael Dunn, April Rae Ellensworth, Evelyn Fazio, Jessica Frazier, Florence Gianforte, Bonnie Graves, Richard Hall, Natasha Joaquin, Christen Johnson, Kathryn Kinzer, Vicky Logan, Heather Mahlin, Rachel Marshall, Frank Mathies, Devralai Morton, Shelly Primus, Steven Stablein, Karen Stout, Amber Weekly, and Christina Williams ("Named Plaintiffs" or "Class Representatives"), on behalf of themselves and other similarly situated current and former hourly home-based customer service agents ("CSAs") who worked for Defendants Teletech Holdings, Inc., Teletech@Home, Inc., and Kenneth Tuchman, (hereinafter, "Defendants" or "Teletech"), to recover unpaid minimum and overtime wages for time spent performing preliminary, mid-shift, or postliminary work activities related to their duties of responding to and handling customer service calls. Plaintiffs brought claims under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201, *et seq.*, the wage and hour laws of twenty-five (25) states, and common law breach of contract claims arising under state laws throughout the United States.

In January 2016, the parties reached a proposed settlement of $3,500,000, which the Court preliminarily approved on April 18, 2016. (Doc. 112.) The settlement secures significant monetary compensation for the twenty-five (25) Named Plaintiffs, the 2,767 "opt-in" Plaintiffs who joined the case by filing written consents pursuant to the Section 216(b) of the FLSA, and the 2,274 additional class members who elected to participate in the settlement. Of the 19,020 eligible settlement class members, 5,327 submitted either a claim form or FLSA consent form. Only nineteen (19) individuals requested to be excluded from the settlement (which equates to 0.001% of the Class), and only two (2) individuals objected. As these statistics demonstrate, and

as described more fully below, the settlement is fair, reasonable, and adequate and, accordingly, Plaintiffs respectfully request that the Court grant their Motion for Final Settlement Approval so that the settlement funds may be distributed.

Further, as compensation for their work and the results obtained in this case, and pursuant to Rules 23(h) and 54(d)(2), Plaintiffs respectfully request the Court award Class Counsel attorneys' fees in the amount of 33% of the total settlement amount, or $1,166,666.67, and reimbursement of necessary and appropriate out-of-pocket litigation expenses not to exceed $175,000. As explained in more detail below, the requested award is consistent with the parties' Settlement Agreement, the fee agreement between Plaintiffs and Class Counsel, and orders from courts within this District and Circuit. The award fairly and reasonably compensates Class Counsel for their efforts to efficiently investigate and prosecute the Plaintiffs' and class members' claims, taking into account the quality, nature, and extent of Class Counsel's efforts in this complex case, the results achieved, the risk of non-payment, and the benefits to the Plaintiffs, class members, and judicial system for achieving the result through settlement. In addition, Plaintiffs request that the Court approve the parties' agreement to grant a total of $65,000.00 in incentive awards to twenty-six (26) Plaintiffs.

<u>**SUMMARY OF FACTS AND PROCEDURAL HISTORY**</u>

**I.      PROCEDURAL POSTURE AND CASE HISTORY**

Plaintiffs Atkinson, Hall, and Primus filed this lawsuit on August 1, 2014. (Doc. 1.) Defendants filed their Answer denying Plaintiffs' allegations on November 7, 2014. (Doc. 16.) In its Answer, Teletech denied that it failed to pay minimum wages or overtime compensation to CSAs. (*Id.*)

On February 26, 2015, the Court granted Plaintiffs' motion for FLSA conditional certification and judicial notice, compelling Defendant to produce a list of all CSAs it employed within three years of the Court's order, and ordering Plaintiffs' counsel to mail and e-mail the approved notice to eligible CSAs. (Doc. 34.) A total of 2,792 individuals filed consent forms. (Declaration of Matthew L. Turner ("Turner Decl.") ¶ 6.)[1]

After the close of the opt-in period, the parties agreed to attempt to resolve the litigation through mediation. (Turner Decl. ¶ 8.) To make mediation most productive, the parties engaged in a streamlined, free-flowing exchange of discovery. Defendant produced a Microsoft excel database containing the time and payroll records and call logs for each of the 2,792 Plaintiffs that had joined the case. (*Id*.) Plaintiffs took a Fed. R. Civ. P. 30(b)(6) deposition of Defendant Teletech@Home, Inc., and Teletech took depositions of four Plaintiffs. (*Id*.)

The parties held two (2) in-person mediation sessions, both with mediator Mark S. Rudy. (*Id*.) At the first mediation, held on October 19, 2015, the parties were unable to reach an agreement. Teletech argued that Plaintiffs did not perform uncompensated mid-shift work activities, and relied on documents purporting to show that it had paid all CSAs for any time they were logged out of Teletech's time-keeping system during their shifts. (Turner Decl. ¶¶ 8-12.) Further, Teletech argued that, even factoring in the time they allegedly spent working off the clock, most CSAs worked less than forty (40) hours per week and thus were not owed any overtime pay. With respect to Plaintiffs' alleged minimum-wage claims, Teletech argued that CSAs' hourly rates were sufficiently above the federal minimum wage such that they still made more than the minimum wage on a weekly basis. Plaintiffs' position was that CSAs could recover unpaid minimum wages computed on an hourly as opposed to a weekly basis. Further, Plaintiffs relied on state minimum wage statutes that in many cases are more protective than the

---

[1] Two individuals subsequently withdrew their consent forms. (*see* Docs. 102, 109.)

FLSA and provide higher minimum-wage rates. (Turner Decl. ¶ 8.) The parties held their second mediation session before Mr. Rudy on January 21, 2016, and agreed to the instant proposed settlement. (*Id.*)

On March 31, 2016, the parties' finalized their proposed settlement agreement (referred to herein as "Class Action Settlement") and Plaintiffs filed an unopposed motion with the Court for preliminary approval. (Doc. 111.) On April 18, 2016, the Court issued an order preliminarily approving the Class Action Settlement as "a fair, reasonable, and adequate resolution of a bona fide dispute between … [Defendants] and the Plaintiffs and other affected employees." (Doc. 112.). Pursuant to Fed. R. Civ. P. 23 and Section 216(b) of the FLSA, the Court preliminarily certified a class for settlement purposed defined as:

> All current and former hourly home-based customer service related employees, including agents, customer service representatives, and all other hourly employees in similar position, who worked for Defendants at any time between August 1, 2011 and February 21, 2016.

(*Id.*) (the "Settlement Class".)

The Court also appointed Sommers Schwartz, P.C. and JTB Law Group L.L.C. as Class Counsel and the Named Plaintiffs as Class Representatives, and approved the parties' proposed notice of settlement, and scheduled a fairness hearing. (*Id.*)

## II.   CLASS DEFINITION

The parties have agreed for settlement purposes only that the following Settlement Class can be certified pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23:

> [A]ll current and former hourly home-based customer service related employees, including agents, customer service representatives, problem resolution representatives, and all other hourly employees in similar positions who worked for Defendants at any time between August 1, 2011 and February 21, 2016.

(Doc. 111-2, Class Action Settlement, ¶ 7). This definition has not changed since the Court entered its Preliminary Approval Order.

## III.  SETTLEMENT AMOUNT AND ALLOCATION

The total settlement amount is $3,500,000. (*See generally*, Class Action Settlement, ¶ 35.) Following deductions for attorneys' fees ($1,166,666.67) (33% of the total settlement amount), litigation expenses and costs (not to exceed $175,000), and Incentive awards ($65,000) (*Id.* at ¶¶ 30, 56-62), the remaining amount was made available to participating Plaintiffs and Settlement Class members.

To determine each eligible Plaintiff and Settlement Class member's share of the settlement funds, the parties agreed to apply a uniform formula to each person's claim to calculate potential unpaid wages. Each settlement claimant that was employed by Defendants for a minimum of four (4) full workweeks during the class period is eligible to receive the greater of (i) a minimum payment of twenty-five dollars ($25); or (ii) a payment calculated by adding fifteen (15) minutes per shift to the weekly time data provided by Defendants, and multiplying any additional unpaid time worked by each Qualified Claimant by their applicable regular hourly rate for all time under forty (40) hours in each workweek and by one-and-one-half times their applicable regular hourly rate for all time over forty (40) in each workweek. (*Id.* at 43(a)-(b).) Individuals who worked less than four (4) full work weeks during the class period are not eligible for a settlement payment. (*Id.* at 43(a).)

## IV.  NOTICE OF SETTLEMENT AND REACTION OF THE CLASS

Consistent with the Court's Preliminary Approval Order, the Settlement Administrator mailed the approved settlement notices to the 19,020 Settlement Class members (including 2,792 individuals who had previously joined as Plaintiffs) on May 9, 2016. (Declaration of Settlement

Administrator KCC ("Morrison Decl.") ¶ 4.) The settlement notice provided the Class Members with information about the terms of the settlement, the allocation of attorneys' fees, their right to object to or exclude themselves from the settlement and provided information regarding the date, time and place of the Fairness Hearing. (Doc. 111-1-A – B; *see also* Exhibit A to Morrison Decl. ¶ 4.)

The notice also summarized the Class Action Settlement release as follows:

[A]ll Potential Claimants who do not exclude themselves from the Settlement shall have fully, finally, and forever settled and released any and all claims, liabilities, and causes of action of every nature and description whatsoever against Defendants that were asserted in, arise out of, or are related to the subject matter of the Lawsuit, including any claim for unpaid wages, overtime wages, minimum wages and/or liquidated damages, interest, attorneys' fees, and litigation costs under the state wage and hour laws, and state breach of contract theories related to unpaid wages, that accrued from August 1, 2011 through February 21, 2016. As permitted by law, Potential Claimants who submit a Claim Form will be barred from bringing their own lawsuit for recovery on any claim under the FLSA. No Potential Claimant will be discriminated or retaliated against for participating in the Settlement.

(Doc. 111-1-B; Exhibit A to Morrison Decl. ¶ 4.)

Should the Court grant this motion, the Settlement Administrator will be responsible for issuing Settlement Payments to participating Plaintiffs and Settlement Class members; calculating and remitting all required payroll taxes to the IRS and state government entities; calculating, issuing, and mailing IRS Form W-2s and IRS Form 1099s to the participating CSAs, and remitting any unclaimed funds to Defendants. (Doc. 111-2, Class Action Settlement, ¶¶ 43-47). Class Counsel will work with the Settlement Administrator to take all necessary steps to ensure that settlement checks and tax documents are mailed to the correct addresses. (Turner Decl. ¶ 25.)

**LAW AND ARGUMENT**

**V.     FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE**

Before a district court approves a settlement, it must find that the settlement is "fair, reasonable, and adequate." *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-CV-1061, 2013 WL 2295880, at *4 (S.D. Ohio May 24, 2013) (*citing UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). In the Sixth Circuit, district courts consider seven factors in determining whether a class action settlement is fair, reasonable, and adequate:

> (1) the risk of fraud or collusion;
> (2) the complexity, expense and likely duration of the litigation;
> (3) the amount of discovery engaged in by the parties;
> (4) the likelihood of success on the merits;
> (5) the opinions of class counsel and class representatives;
> (6) the reaction of absent class members; and
> (7) the public interest.

*Id.* (citing *UAW*, 497 F.3d at 631). In reviewing a proposed class action settlement, district courts have "wide discretion in assessing the weight and applicability" of the relevant factors. *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992). As set forth below, the settlement easily meets the standard for final settlement approval and should be approved by the Court.

**A.     The Absence of Collusion Supports Approval**

It is beyond dispute that the settlement was the result of arm's-length negotiations, free of collusion or fraud, conducted by experienced counsel for all parties, and achieved through a formal mediation conducted by a neutral mediator. *See Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("[t]he participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").  The proposed Class Action Settlement was the result of hard-fought litigation and negotiations. Teletech put forth a strong

opposition to Plaintiff's motion for conditional certification and took depositions of several Plaintiffs. The parties engaged in prolonged negotiations, spanning over eight (8) months and two mediation sessions, which were informed by the substantial volume of data exchanged as well as each counsels' experience in litigating and settling complex multistate class actions like this one.

**B.**     **The Complexity, Expense, and Likely Duration of the Case Supports Approval**

This factor strongly favors approval because, absent settlement, continued litigation would require additional discovery and motion practice concerning highly disputed issues, including but not limited to: (i) whether the preliminary time the Class Members spend on start-up and log- in activities each session is compensable time; (ii) whether the mid-shift time the Class Members spend on connectivity issues is compensable time; (iii) whether the time the Class Members spend on boot-up and login activities during their lunch break is compensable time; (iv) whether the postliminary time the Class Members spend on log-out activities is compensable time; (v) whether the Class Members are owed wages (above the federally mandated minimum wage and overtime due under the FLSA) for time spent performing preliminary, mid-shift, or postliminary activities, and if so, the appropriate amount thereof; (vi) whether Defendants' non-payment of wages amount to a breach of contract; (vii) whether Defendants violated any other statutory provisions regarding compensation due to the Class Members; and (viii) whether the Class Members have sustained damages and, if so, the proper measure of damages.

Continued litigation would require the parties to litigate these issues with respect to thousands of current and former CSAs who are scattered throughout the country.[2] Because many CSAs may stand to recover more under state law than the FLSA, further litigation would have required Class Counsel to litigate a multitude of issues arising under the statutes and regulations of the twenty-five (25) different states included in the Second Amended Complaint. Rather than continue further down this path, the settlement confers a substantial and immediate benefit upon class members. This factor thus weighs in favor of approval.

### C.     The Amount of Discovery Taken by the Parties Supports Approval

Since filing the Complaint in August 2014, Class Counsel has extensively investigated the facts, claims, and defenses at issue in the case through hundreds of live and written interviews with Named and Opt-in Plaintiffs, an extensive review of documents produced by Plaintiffs and Defendant, and, in preparation for the two mediation sessions, analysis of thousands of lines of electronic data relevant to the CSAs' potential damages. (Turner Decl. ¶ 8.) Class Counsel also deposed Defendant's corporate representative, and four Plaintiffs testified at depositions about their experiences as CSAs. Accordingly, the parties were well informed of the facts, evidence, and legal issues present in this case prior to the mediation during which the Settlement was reached.

### D.     The Likelihood of Success on the Merits Weighs in Favor of Approval

The Settlement provides relief to class members, and eliminates the risks that the parties would otherwise bear if this litigation were to continue on for more years. As discussed above, absent settlement, the parties would have engaged in additional discovery (including written discovery and depositions), and motion practice (class decertification, FLSA collective

---

[2] The 2,792 opt-in Plaintiffs in this matter worked in a total of forty-six (46) different states, as well as the District of Columbia.

decertification, dispositive motions on merits and damages issues). While Plaintiffs continue to believe that they would ultimately prevail on these issues, they recognize the inherent risk of litigation and trial. *See, e.g. Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F.3d 1069 (9th Cir. 2016) (affirming district court's finding that employee's time spent booting up computer was *de minimus* and thus not compensable); *Faust v. Comcast Cable Communs. Mgmt., LLC*, No. WMN-10-2336, 2014 U.S. Dist. LEXIS 95790, at *25-46 (D. Md. July 15, 2014) (denying class certification of claims by call center employees that they were required to perform uncompensated preliminary, mid-shift, or postliminary work activities). By agreeing to the Settlement, those risks are eliminated and participating class members are guaranteed to receive an excellent recovery now, rather than to possibly receive a recovery years from now.

### E. The Opinions of Class Counsel and the Class Representatives Supports Approval

Class Counsel believes that this settlement is fair and reasonable both standing on its own and when viewed against other overtime settlements. (Turner Decl. ¶ 22-24, 32-33.) All twenty-five (25) of the Class Representatives signed the Settlement Agreement and have returned timely Claim Forms, confirming their support for the Settlement. Accordingly, this factor weighs in favor of final approval.

### F. The Reaction of the Class Members Supports Approval

The reaction of the class also supports approval. Of the 19,020 eligible settlement class members, 5,327 submitted either a claim form or FLSA consent form. Only nineteen (19) individuals requested to be excluded from the settlement (which equates to 0.001% of the Class), and only two (2) individuals objected. This positive reaction to the settlement thus supports approval.

Regarding the two objectors, there was no formal objection filed with the Court,[3] therefore, by virtue of the Order and failure to conform with the requirements set forth in the Settlement process, there is no objection that the Court should consider.  However, out of an abundance of caution, Counsel notifies the Court of two individuals who notified counsel of their theoretical issues with the settlement.  One is mainly based on a legislative concern and both have individualized, particularized issues that are beyond the scope of this litigation and not suitable for relief in the Rule 23 context. On or about June 20th, 2016, class member Shermaine Shell wrote counsel a letter indicating she strongly disagreed with the settlement. (Exhibit 5) The crux of her complaint stems from her allegations that the violations of the FLSA "have been going on long before 2011," and she believes that compensation should extend beyond the statutory period enabled by law.  Unfortunately, the FLSA only enables at best a three year look-back so the issue raised is a legislative concern, and not a basis for an objection. (see 29 U.S.C. §255 which permits a 2 year FLSA look back, 3 for willfulness).  Further, she takes issue with the Maximum Settlement Amount, asking for an enlargement to compensate a period of time that is not compensable by operation of law.  She also raised issues regarding the company pulling incentives and bonus money which was beyond the scope of this litigation and a particularized issue in which she indicated certain groups received bonuses but others didn't. By its very nature those claims which pit one portion of the class against the other are not suitable for relief in a

---

[3] According to Paragraph E of the Settlement Notice:

"If you believe the proposed Settlement is inadequate, but you would still like to participate in the Settlement, you may object to the Settlement by filing a written Objection clearly describing why you believe the Settlement is not fair or reasonable with the Court and mailing a copy of each to Class Counsel and Defendants' Counsel at the addresses above **_post-marked no later than [45 days from initial mailing]._** If you simply do not want to be included in the settlement for any reason, y*our Opt-Out Form must be **_post-marked no later than [45 days from initial mailing]._*** Late or incomplete Objections or Opt-Out Forms will not be honored."

global Rule 23 mechanism, even assuming arguendo they had any merit, which on their face are dubious. While Ms. Shell's disagreement with the settlement may be heartfelt, they have no underlying merit in the context of this litigation.

On or about June 18, 2016, class member, April L. Robinson wrote counsel a letter indicating the settlement was inadequate. (Morrison Decl., Exhibit C). The basis of her concerns seems to stem around a computer virus that she had on her computer, alleged inadequate training, and allegations regarding her not receiving any pay for some training received despite raising it with the company. Her issues are particularized issues that were beyond the scope of issues raised in this litigation. In good faith, Plaintiff's counsel asked the Defendant to look into the issue surrounding non-payment for her training and to date the individualized issue has not been resolved. However, individualized particularized issues are not a basis for a class wide objection.

No discovery was served on any of the individuals who raised "issues" regarding the settlement, in part because neither "complainant" is properly before the Court, failing to file an objection as per the terms of the Order and in further part, neither raising a substantive basis assuming arguendo, that the issues were construed as objections. Therefore, the Court should not consider the points as properly raised objections, or if they are considered objections, reject them by weighing the strong interest of the class in securing an excellent settlement that obtains meaningful economic relief against individualized, particularized concerns that are not conducive to Rule 23 resolution and a legislative concern regarding the statute of limitations which is the province of the legislature.

### G. Approval of the Settlement is in the Public's Interest

Public policy generally favors settlement of class action lawsuits. *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) (citing *Whitford v. First Nationwide Bank*, 147 F.R.D.

135, 143 (W.D. Ky. 1992)). The Class Action Settlement provides relief for a substantial number of class members, avoids further litigation in a large and complex case and frees the Court's valuable judicial resources. Accordingly, the Court should conclude that this factor weighs in favor of approving the proposed Settlement because the public interest is served by resolution of this action.

### H. The Settlement Notice was Sufficient

Lastly, the content of the settlement notice, which the Court approved in its Preliminary Approval Order, fully complies with due process and Rule 23. (*See* Preliminary Approval Order, Doc. 112.) Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

The settlement notice satisfied each of these requirements and was designed to advise class members of their rights. (*See* Settlement Notice, Doc. 111-1-B.)

Further, the Settlement Administrator mailed the court-approved settlement notice to class members on May 9, 2016, consistent with this Court's Preliminary Approval Order. (*See* Morrison Decl. ¶ 4.) As such, the Court should find that the parties have satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, and that the settlement constituted the best notice practicable under the circumstances.

## VI. CLASS COUNSEL'S ATTORNEYS' FEES ARE REASONABLE

District courts may award reasonable attorneys' fees and expenses from the settlement of a class action upon motion under Fed. R. Civ. P. 54(d)(2) and 23(h). *Lowther v. AK Steel Corp.*,

No. 1:11-cv-877, 2012 WL 6676131, at *1 (S.D. Ohio Dec. 21, 2012). When assessing the reasonableness of a fee petition, district courts engage in a two-part analysis. See *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007). First, the district court determines the method for calculating the attorneys' fees: either the percentage of the fund approach or the lodestar approach. *Id.* (citing *In re DPL, Inc., Sec. Litig.*, 307 F. Supp. 2d 947, 949-51 (S.D. Ohio 2004)). Second, the district court must analyze and weigh the six factors described by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F. 2d 1188 (6th Cir. 1974). *Id.*

## A. The Court Should Adopt the Percentage Approach to Award Attorneys' Fees

In the Sixth Circuit, district courts have the discretion "to determine the appropriate method for calculating attorneys' fees in light of the unique characteristics of class actions in general, and the particular circumstances of the actual cases pending before the Court" using either the percentage or lodestar approach. *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d at 761 (citing *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996)). In this district, "the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-CV-1119, 2011 WL 292008, at *13 (S.D. Ohio Jan. 26, 2011). Here, Plaintiffs request that the Court adopt the percentage approach to award Class Counsel's attorneys' fees in the amount of 33% of the Settlement Fund, or $1,166,666.67.

## B. The *Ramey* Factors Weigh in Favor of Awarding the Requested Fees

In reviewing the reasonableness of the requested award, the Sixth Circuit requires district courts to consider six factors:

(1) the value of the benefits rendered to the class;
(2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;

14

(3) whether the services were undertaken on a contingent fee basis;
(4) the value of the services on an hourly basis [the lodestar cross-check];
(5) the complexity of the litigation; and
(6) the professional skill and standing of counsel on both sides.

*Ramey*, 508 F. 2d at 1194-97. Each of these factors weighs in favor of awarding the requested attorneys' fees.

### 1.    *The settlement provides a substantial benefit to the class*

Class Counsel's work resulted in a settlement of $3,500,000. Of this amount, approximately $2,093,000.00 will be available to the 5,327 participating Named Plaintiffs, Opt-in Plaintiffs, and Settlement Class Members. The settlement funds will be allocated in a way that fairly approximates the damages that Plaintiffs allege they and other CSAs are owed as a result of Teletech's failure to compensate them for preliminary, mid-shift, or postliminary work activities. To calculate individual payments the Administrator will perform an individual review of each settlement participant's payroll records to determine the total number of shifts worked between August 1, 2011 and February 21, 2016. For each shift work, the participant will receive a payment for fifteen (15) minutes of work, calculated at their regular rate for minutes that are within forty (40) hours in the applicable workweek and at time-and-a-half their regular rate for minutes that are over forty (40) hours in the applicable workweek.

Further, the settlement provides immediate relief to class members, eliminating additional risks they would otherwise face if the litigation continued to summary judgment on the merits, trial, and appeal. Absent settlement, the parties would have engaged in additional and extensive discovery (including written discovery and multiple depositions of Plaintiffs and management witnesses), as well as additional motion practice (decertification of the FLSA collective, Rule 23 certification, and, summary judgment). While Plaintiffs maintain that they would ultimately prevail on these issues, they recognize the inherent risk of litigation, particularly in a case of this

15

magnitude. By agreeing to the Settlement, those risks are eliminated and participating class members are guaranteed to receive an excellent recovery now, rather than to possibly receive a recovery years from now.

### 2. *Society's stake in rewarding attorneys who produce the benefits to the class in order to maintain an incentive to others*

Society's stake in rewarding attorneys who bring class action wage-and-hour cases favors the requested award. *Gentrup v. Renovo Servs., LLC*, No. 1:07-cv-430, 2011 WL 2532922, at *4 (S.D. Ohio, June 24, 2011) ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage-and-hour cases, as these are frequently complex matters."). Here, Class Counsel recovered overtime wages for 5,327 current and former CSAs. Without this lawsuit, few of these individuals would have known about their potential claims, let alone had the motivation or resources to pursue them. *See Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) ("Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own."). Moreover, the requested award—33% of the common fund—is within the range approved by Courts in this district, but not so high that it would constitute a windfall. *See Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007). This is especially true in light of the extensive work performed by Class Counsel over two years of litigation, the additional work Class Counsel has committed to perform to ensure that participating Plaintiffs and class members receive the settlement payments and tax documents, receive reissued checks as necessary, and are aware of the settlement check void date. (Turner Decl. ¶¶ 26-30; Exhibit 3, Declaration of Jason T. Brown ("Brown Decl.") ¶ 6.)) Accordingly, this factor supports the requested fees.

### 3. Class Counsel undertook considerable risk of nonpayment in litigating this case on a contingency basis

Despite the risks associated with prosecuting this case, Class Counsel took this case solely on a contingency fee basis and were prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. (Turner Decl. ¶ 18; Brown Decl. ¶¶ 17-19.) Class Counsel's investigation began based on interviews with a handful of CSA's located throughout the county. At this time, all of the critical time and payroll records were in Teletech's possession, and Class Counsel had to proceed in reliance of CSAs' recollections of the of the time they spent performing preliminary, mid-shift, and postliminary work activities. (Turner Decl. ¶ 8; Brown Decl. ¶ 18.) Had CSAs' recollections been mistaken by even a few minutes, their claims would have been susceptible to a *de minimis* defense. Further, because CSAs' work activity was recorded on a variety of different software programs, Class Counsel could not rule out the possibility that the CSAs they interviewed were paid for their preliminary, mid-shift, and postliminary work activities but did not know it. (Brown Decl. ¶ 18.)

Even assuming liability could be established, Class Counsel incurred the risk that Plaintiffs' damages would be too low to offset the costs advanced to investigate and prosecute this matter. One of Teletech's main arguments, advanced in opposition to conditional certification and during mediation, was that in most weeks CSAs did not work overtime and received a rate of pay sufficient to keep their weekly pay above the minimum wage, even factoring in alleged off-the-clock work. Thus, had litigation proceeded Teletech would have attempted to limit Plaintiffs' damages to the small subset of weeks in which they worked overtime. (Turner Decl. ¶¶ 11-12.)

Finally, Class Counsel incurred substantial risks that this action would not be able to proceed on a collective or class basis. Because each CSA worked from his or her home

computer, Teletech would have attempted to show differences in the time CSAs spent performing uncompensated work and the methods they employed to report their time on Teletech's software. Discovery may have been propounded on hundreds of class-members, many of whom would have slim incentive to respond given the small value of individual claims in this case). Because of the wide geographical scope of the class, a decertification order could have potentially resulted in the case being split into several actions and transferred to jurisdictions around the country.

Class Counsel committed just over 2,236.8 hours through the course of this litigation, a significant expenditure of time, all of which was devoted on a contingency basis with no guarantee of payment. (Turner Decl. ¶ 19; Brown Decl. ¶ 3.) Among other tasks, these hours were spent performing the following tasks that were necessary and integral to the successful resolution of this case: (1) investigating the potential claims; (2) drafting the various initiating documents and the Complaint; (3) interviewing the Named Plaintiffs as well as hundreds of Opt-in Plaintiffs regarding their claims; (4) preparing and serving initial disclosures and written discovery; (5) briefing conditional certification; (6) issuing the FLSA notice, filing consent forms, and communicating with putative opt-in Plaintiffs; (7) preparing the Second Amended Complaint, including designating twenty-five named class representatives and alleging violations of thirty seven (37) different state statutes; (8) drafting written discovery, reviewing responsive documents, and taking and defending depositions; (9) preparing for and attending the October 2015 mediation; (10) preparing for and attending the January 2016 mediation; (11) negotiating, drafting, editing, and filing the Class Action Settlement and settlement approval papers; (13) communicating with Plaintiffs and class members during the settlement notice period. (Turner Decl. ¶ 8; Brown Decl. ¶ 4.) These hours were reasonable and necessary given the breadth and

scope of the issues in this case, as well as the dedicated efforts of counsel to obtain relief for the class.

In addition, Class Counsel will continue to represent the Plaintiffs and class members throughout the next several months to ensure that the settlement funds and tax documents are disseminated in a timely fashion and mailed to correct addresses, and to answer questions about the settlement. (Turner Decl. ¶ 25; Brown Decl. ¶ 6.) This factor thus weighs in favor of awarding the requested fee. *See Gentrup*, 2011 WL 2532922, at *4 (finding that plaintiffs' counsel had made "significant investments of time and [had] advanced costs but [had] received no compensation in this matter" weighed in favor of the requested fee).

### 4. *The lodestar cross check supports approval of the requested fees*

As a way to "cross check" the fourth *Ramey* factor, the value of the services rendered, district courts calculate the lodestar figure and compare it with the amount requested under the percentage approach. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d at 761. The number of hours expended "creating, protecting, or preserving the fund recovered" is then multiplied by a "reasonable hourly rate" to produce a lodestar figure. *Id*. The reasonable hourly rate is "is determined by reference to the prevailing market rates in the relevant community." *Lowther*, 2012 WL 6676131, at *4. The appropriate market to determine the reasonable hourly rate is that of similar types of cases, in terms of both size and complexity. *Id*. (quoting *McHugh v. Olympia Entm't, Inc*., 37 F. App'x 730, 740 (6th Cir. 2002)). The FLSA is an area of the law practiced by a small subset of the bar, with even fewer attorneys capable of handling a case of this size and complexity, against a company with seemingly unlimited resources. Accordingly, in calculating lodestar, Class Counsel utilized the rates they would charge in their home courts and for paying clients.

The lodestar figure may be increased by "multiplying it by a factor it deems reasonable (the 'lodestar multiplier')." *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d at 761. A variety of factors are examined in determining the appropriate multiplier, including, "the nature of the case, the market for such legal service, the risk involved and the results achieved." *Id*. The multiplier is designed to reward Class Counsel for taking on more risk, providing "superior quality" representation, or achieving a greater settlement. *Id*. Courts frequently award multipliers between one and four. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) (quoting 3 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 14.03 at 14-5 (3d ed. 1992)). The same is true in this district. *See, e.g., Lowther*, 2012 WL 6676131, at *5-6 (awarding $1,275,000 in fees with a lodestar cross-check of $416,669.48 (3.06 multiplier)); *Bailey v. AK Steel Corp.*, No. 1:06-cv-468, 2008 WL 553764, at *3 (S.D. Ohio Feb. 28, 2008) ("The multiplier [of 3.04] is fully warranted given the complexity of the case, the attendant risks, the size of the settlement recovered, and class counsels' continuing obligations to the class, and it is well within the range of multipliers awarded in similar litigation."); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d at 767 (lodestar multiplier of 6.0, noting that the typical lodestar multiplier in large class actions "ranges from 1.3 to 4.5"). *See also Heibel v. U.S. Bank Nat'l Assoc.*, No. 2:11-cv-00593-EAS-NMK (S.D. Ohio May 21, 2014) (granting motion for final approval and awarding fees and costs to class counsel with multiplier of 3.28.); *Struck v. PNC Bank N.A.*, No. 2:11-cv-00982- ALM-NMK (S.D. Ohio May 16, 2014) (same, with multiplier of 2.64).

Class Counsel's total lodestar through July 18, 2016, is 899,913.35. (Turner Decl. ¶ 26; Brown Decl. ¶ 3; Exhibit 4, Declaration of Robert E. DeRose ("DeRose Decl."), ¶ 6.) The lodestar multiplier is thus 1.3, well within the range typically approved in this district. The

reasonableness of the fee award and the multiplier are further evidenced by the fact that Class Counsel will expend additional time and resources over the next several months in order to oversee the disbursement of the settlement funds. (Turner Decl. ¶ 25; Brown Decl. ¶ 6.) Taking all of this into consideration, the lodestar crosscheck thus illustrates that Class Counsel's fee award is well within the range of reasonableness, particularly for a case in which the class's reaction has been positive and considering the time and labor expended, the magnitude of the litigation, the risks, the monetary results achieved for the class, and the amount of the fee in proportion to the monetary settlement.

### 5. *The complexity of this litigation weighs in favor of the requested award*

Wage-and-hour collective and class actions are "frequently complex matters." *Gentrup*, 2011 WL 2532922, at *4; This is particularly true here, where Plaintiffs alleged claims not only under the FLSA, but under the laws of twenty-five (25) different states. Indeed, because many CSAs stood to recover more under state law than federal, Class Counsel's efforts in researching the damage remedies available under various state statutes was instrumental in persuading Teletech that its potential exposure justified a $3.5 million settlement. Determining whether Defendant's CSAs were entitled to minimum wages and overtime compensation under these laws—at summary judgment or at trial—would have involved additional extensive discovery and detailed analysis of damages, potentially requiring the use of an expert. At the same time, however, Plaintiffs faced several procedural hurdles that may have prevented them from even getting to the merits: obtaining Rule 23 certification and withstanding motions for class and collective decertification. Resolving the merits, damages, and procedural issues would have been risky, costly, and time consuming. Accordingly, the litigation was difficult and complex, and this factor weighs in favor of awarding the requested fees.

### 6. Class counsel's skill supports approval

The skill and efficiency of attorneys is evidenced by their local reputations as well as their experience and expertise in the area. *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 249 (S.D. Ohio 1991). In assessing the skill of Class Counsel, it is also important to assess the quality of defense counsel as well, to determine the quality of service Class Counsel rendered. *See Lowther*, 2012 WL 6676131, at *3 (citing *Smillie v. Park Chem. Co.*, 710 F. 2d 271, 275 (6th Cir. 1983)). Class Counsel in this matter are Sommers Schwartz, P.C. and JTB Law Group L.L.C. As discussed in the Declarations of Matthew L. Turner and Jason T. Brown, Class Counsel are qualified, experienced, and have substantial credentials representing plaintiffs, particularly employees, in class and collective action litigation. (Turner Decl. ¶¶ 2, 29; Brown Decl. ¶¶ 8-16.) Likewise, Defendants are represented by experienced and skilled counsel at Baker Mackenzie, one of the largest and most prominent law firms in the world. The lawyers representing Defendant have extensive experience representing employers in wage-and-hour class and collective actions. Accordingly, the professional skill and standing of counsel on both sides is substantial and this factor supports approval of the requested fee award.

### 7. The requested fee award is comparable to fee awards in similar cases

Lastly, although not one of the Ramey factors, comparing the fees requested in this case to the fees awarded in similar cases further evidences the reasonableness of Class Counsel's request for an award of 33% of the settlement fund. *See, e.g., Heibel*, No. 2:11-cv-00593-EAS-NMK (S.D. Ohio May 21, 2014) (approving attorneys' fees of 33%); *Struck*, No. 2:11-cv-00982-ALM-NMK (S.D. Ohio May 16, 2014) (same); *Johnson*, 2013 WL 2295880, at *6 (awarding 33% of the settlement funds in class action case); *Rotuna v. W. Customer Mgmt. Grp.*, LLC, No. 4:09CV1608, 2010 WL 2490989, at *7-8 (N.D. Ohio June 15, 2010) (approving attorneys' fees

of one-third of the settlement amount in wage-and-hour class and collective action involving 1,778 employees); *Dillworth v. Case Farms Processing, Inc*., No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (approving attorneys' fee award of one-third of the total settlement amount in wage-and-hour class and collective action); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 218 (S.D. Ohio 1997), *rev'd on other grounds*, 24 Fed. App'x 520 (6th Cir. 2001) (approving an award of $1.4 million in fees, representing 34% of the total amount of the common fund, and noting that it is within the 20% to 50% range of reasonableness); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913 (S.D. Ohio 2001) (noting that attorneys' fees awards typically range from 20% to 50% of the common fund); *In re Telectronics Pacing Sys., Inc*., 137 F. Supp. 2d 1029, 1046, *decision clarified*, 148 F. Supp. 2d 936 (S.D. Ohio 2001) (same).

## VII. CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF NECESSARY EXPENSES SHOULD BE APPROVED

"Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Datatec Systems*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *9 (D.N.J. Nov. 28, 2007) (quoting *In re Safety Components, Inc. Sec. Litig*., 166 F. Supp. 2d 72, 108 (D.N.J. 2001)); *see also In re Rent-Way Sec. Litig*., 305 F. Supp. 2d 491, 519 (W.D. Pa. 2003).

Class Counsel request reimbursement of expenses in the amount not to exceed $175,000.00 to cover costs associated with court fees, case marketing, mediations, conference call charges, travel and accommodations (for depositions, mediation sessions, and the final approval hearing), legal research, deposition transcripts, photocopies, PACER fees, and postage. (Turner Decl. ¶ 31; Brown Decl. ¶ 7.) These expenses, while substantial, are reasonable given the full scope of the litigation, are documented in Class Counsel business records, are reasonable in relation to the Settlement Fund, and should be awarded. (Turner Decl. ¶ 31; Brown Decl. ¶

23

DeRose Decl., ¶ 6.) Moreover, they are consistent with awards in other class action cases. *See Heibel*, No. 2:11-cv-00593-EAS-NMK (S.D. Ohio May 21, 2014) (approving reimbursement for nearly identical costs); *Struck*, No. 2:11-cv-00982-ALM-NMK (S.D. Ohio May 16, 2014) (same); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2012 WL 5493613, at *8 (E.D. Mich. Nov. 13, 2012) (approving costs to plaintiff's counsel related to travel, telephone, printing, postage, federal express, Westlaw and IT services); *In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061, 1066 (E.D. Mo. 2002) (awarding approximately $1.7 million to plaintiffs' counsel as reimbursement for out-of-pocket expenses advanced during the litigation including "expert witnesses; computerized research; court reporting services; travel expenses; copy, telephone and facsimile expenses; mediation; and class notification.").

## VIII. THE PROPOSED CLASS REPRESENTATIVE AWARDS ARE REASONABLE

Plaintiffs request that the Court approve class representative Incentive awards totaling $65,000: $2,500 to Named Plaintiffs Tina Atkinson, Christopher Cashion, Abigail Colley, Patricia Colon, Sheree De Pass, Rachael Dunn, April Rae Ellensworth, Evelyn Fazio, Jessica Frazier, Florence Gianforte, Bonnie Graves, Richard Hall, Natasha Joaquin, Christen Johnson, Kathryn Kinzer, Vicky Logan, Heather Mahlin, Rachel Marshall, Frank Mathies, Devralai Morton, Shelly Primus, Steven Stablein, Karen Stout, Amber Weekly, and Christina Williams, and $2,500 to Opt-in Plaintiff Rachel Jefferson. (Turner Decl. ¶ 16.)

Courts in the Southern District of Ohio have approved incentive awards for class representatives after consideration of several factors, including their actions to protect the rights of the class members, whether those actions resulted in a substantial benefit to the class members, whether the class representative assumed any direct or indirect financial risk, and the

amount of time and effort spent pursuing the litigation. *See Johnson*, 2013 WL 2295880, at *5 (citing *Hainey v. Parrott*, 617 F. Supp. 2d 668, 677 (S.D. Ohio 2007)).

Here, the modest enhancement awards appropriately compensate each proposed recipient for their time and effort in prosecuting the claims asserted in this action. The Plaintiffs have made significant contributions to the litigation, and without their valuable assistance and participation, this case would not have been initiated. (Turner Decl. ¶ 15.) Named Plaintiffs Atkinson, Hall, and Primus, as well as Opt-in Plaintiff Jefferson, provided Class Counsel with information early in the case that provided a foundation for Class Counsel's more widespread investigation and commencement of the action. (Turner Decl. ¶ 15.) Subsequently, proposed recipients Frazier, Gianforte, Graves, Mathies, and Stout filed consent forms, provided Class Counsel with information that supported their successful conditional certification motion, and agreed to be designated as Named Plaintiffs in the First Amended Complaint, filed on November 17, 2014.[4] (Doc. 18). The remaining proposed recipients—Cashion, Colley, Colon, De Pass, Dunn, Ellensworth, Fazio, Joaquin, Johnson, Kinzer, Logan, Mahlin, Morton, Stablein, Weekly, and Williams—joined the case after receiving the Court-approved collective action notice. These individuals were designated as Named Plaintiffs in Plaintiffs' Second Amended Complaint and serve as class representatives for the claims asserted under the laws of the state in which each of them worked. Each individual has given their full cooperation to Class Counsel by providing thoughtful and thorough responses during interviews, carefully reviewing and promptly signing all papers necessary to advance the action, and by being responsive to all of Class Counsel's inquiries.

In addition to the Named Plaintiffs' efforts in the litigation that directly benefitted the class members, the requested enhancement payments are also reasonable for a number of other

---

[4] Frank Mathies did not become a Named Plaintiff until Plaintiffs filed their Second Amended Complaint.

reasons. First, given the amount of the total settlement and the modest size of the awards, the awards do not significantly reduce the amount of settlement funds available to the Plaintiffs and class members. Second, awards like this advance public policy by encouraging other individuals to come forward to protect the rights of others in representative actions, particularly those involving employment statutes. Third, Defendant does not oppose the award of the requested enhancement awards. Finally, the requested enhancement awards are in line with those approved by Courts in this circuit in similar cases. *See e.g., Johnson*, 2013 WL 2295880, at *5 (approving $12,500 enhancement award to the named plaintiff from a $452,380 settlement); *Dillworth*, 2010 WL 776933, at *7 (approving enhancement awards of $6,000 and $4,000); *Heibel v. U.S. Bank Nat'l Assoc.*, No. 2:11-cv- 00593-EAS-NMK (S.D. Ohio May 21, 2014) (approving incentive payments of $5,000 to original named plaintiffs); *Struck*, No. 2:11-cv-00982-ALM-NMK (S.D. Ohio May 16, 2014) (same). As such, the requested enhancement payments are reasonable and should be approved.

## CONCLUSION

For all of the reasons stated above, Plaintiffs respectfully request that the Court enter the proposed Order finally approving of the settlement submitted herewith and award the requested attorneys' fees, costs, and class representative awards.

Respectfully submitted this 18th day of July, 2016.

/s/ Matthew L. Turner
Matthew L. Turner *(PHV)*
Jason J. Thompson *(PHV)*
Kevin J. Stoops *(PHV)*
Jesse L. Young (PHV)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
248-355-0300
mturner@sommerspc.com
jthompson@sommerspc.com
kstoops@sommerspc.com
jyoung@sommerspc.com

Jason T. Brown *(PHV)*
Nicholas Conlon *(PHV)*
JTB LAW GROUP, L.L.C.
155 2nd Street, Suite 4
Jersey City, NJ 07302
Phone: (201) 630-0000
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com

Robert E. DeRose (OH Bar No. 0055214)
Robi J. Baishnab (OH Bar No. 0086195)
BARKAN MEIZLISH, et al. 10th Floor
250 East Broad Street
Columbus, OH 43215
614-221-4221
rbaishnab@barkanmeizlish.com
bderose@barkanmeizlish.com

*Attorneys for Plaintiffs*

27

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 18th day of July 2016, I filed Plaintiffs' Unopposed Motion for Final Settlement Approval and Approval of Attorneys' Fees, Costs, and Class Representative Awards and supporting exhibits, which caused email notification of same to be delivered to all counsel of record.

/s      Nicholas R. Conlon

Nicholas R. Conlon
